## No. 13,902.

### F. H. COWDEN VS. SHREVEPORT BELT RAILWAY COMPANY.

#### SYLLABUS.

1. Not to look to see if a car is coming before attempting to cross the track of an electric car, is negligence such as will preclude recovery for injuries caused by a collision with the car, in the absence of proof that the persons in charge of the car by the use of ordinary diligence might have avoided the collision.

2. *Held* in this case as a question of fact that the motorneer was not negligent, and that he could not have avoided the collision by the exercise of ordinary care.

APPEAL from the First Judicial District Court, Parish of Caddo— *Land, Judge.*

---

*Shepherd & Pleasants,* for Plaintiff, Appellee.

*Wise & Herndon,* for Defendant, Appellant.

---

The opinion of the court was delivered by

PROVOSTY, J.   The plaintiff's wife and daughter, and another lady and plaintiff's eighteen-year-old son, were returning home about nine o'clock at night, in an ordinary farm wagon, drawn by two horses at a brisk trot, in the City of Shreveport.   They drove down Marshall street and straight on to cross the track of the defendant company on Crockett street, when one of the electric cars of the defendant company struck the wagon between the front and hind wheels, dragged it about thirty feet, upset and broke it, and threw the occupants to the ground, injuring the plaintiff's wife and daughter.

Plaintiff sues for damages for these injuries, but he cannot recover. It is but another case of people venturing to attempt to cross a street car track without looking to see whether a car is coming. Measurements and experiments as to the reliability of which there can be no question, show that a person standing in the center of Marshall street, thirty-four and one-half feet from the track, on Crockett street, can see one block up Crockett street, and that a person standing on the property line of Crockett street, thirty and one half feet from the track, can see two blocks up Crockett street, and that a person standing on the line of the outer edge of the sidewalk can see four or five blocks up Crockett street.   The same experiments show that the view from the outer edge of the sidewalk is unobstructed, and that from the inner edge of the sidewalk, or the property line, it is practically unobstructed.   Bearing this in mind, it is impossible to read the testimony of the inmates of the wagon without coming to the conclusion that they attempted to cross the track without looking to see whether a car was coming, and this, under our settled jurisprudence, is contributory negligence, which precludes recovery.   Snyder vs. Railroad, 48 Ann. 1; Hoelzel vs. Crescent City Railroad Company, 49 Ann. 1302; Webster vs. N. O. C. & L. R. R., 51 Ann. 299; Farrar vs. R. R. Co., 52 Ann. 410; Dieck vs. Railroad Company, 51 Ann. 265; Posano vs. St. Charles Street Railway, 52 Ann. 245.

(Extract from the testimony of Mrs. Cowden):—

"Q.—Who was the first to discover the approach of the car?

"A.—We all discovered it at the same time.

"Q.—Was or not the car lighted up?

"A.—It was lighted up.

"Q.—You knew that the railroad cars ran there constantly and that " it was a dangerous place?

"A.—We frequently crossed the track at the place and knew it was a " dangerous place, so checked up.

"Q.—And knowing it was a place of danger, the horses were checked " before you got on the track, into a walk?

"A.—Yes, sir.

"Q.—You could not see any car and then you went across?

"A.—Yes, sir.

"Q.—In what gait?

"A.—We went just in a walk across the track.

"Q.—The car was just a car length away when you started to cross " the track?

"A.—I should think so, because you cannot see the car there; it was " just a short distance."

(Extract from the testimony of Miss Grace Cowden) :—

"Q.—Do you know whether his horses' heads were near the track or " on it?

"A.—The horses' heads were close to the track or over it when I saw " the car."

(Extract from the testimony of Owen Cowden) :—

"Q.—How far did you say the car was from you when you first saw " it?

"A.—Ten or fifteen feet.

"Q.—Where was your wagon?

"A.—The horses heads were on the track.

"Q.—Before the horses' heads got to the track how far were you from "the car?

"A.—I didn't see the car at all before they were on the track."

Plaintiff argues that granting contributory negligence, defendant had time in which to discover the danger and by ordinary care avoid it; and ought to have done so, under penalty of full responsibility, notwithstanding the contributory negligence.    Between that doctrine and the total nullification of the doctrine of contributory negligence, the middle ground is so narrow that it seems difficult to occupy it without a straddle; and the query is whether courts had not better take up apothecary's scales and weigh the respective negligence of the parties, as is done in France and in admiralty, or else firmly apply the broad doctrine of contributory negligence.   But this is

sa..d merely in passing, for even under this mild form of nullification of the doctrine of contributory negligence, the defendant in this case is not responsible.

Given two streets intersecting at right angles, wide sixty-six feet from property line to property line, and forty-two feet from curb to curb, the sidewalks being of twelve feet, and an electric car moving in the center of one of the streets at a speed of ten miles an hour, and a wagon coming down the center of the other street at a speed of not less than five miles, and probably much more, an hour, and keeping straight on its course, and the car and wagon meeting at the intersection—evidently no ordinary care of the motorneer can prevent a collision.

It is exceedingly doubtful if extraordinary care of the motorneer could prevent a collision, and by extraordinary care we mean care extraordinary even for a motorneer, whose ordinary care comprehends utmost vigilance. The alertest and nimblest motorneer takes more or less time in which to go through the movements required for putting on the brake and reversing the current, and the best geared electric car takes more or less time to overcome the *momentum* imparted by a speed of ten miles an hour; we doubt that these results can be accomplished in five seconds, which is the time required by the wagon to traverse the space between the property line and the track.

Taking the hypothesis propounded in plaintiff's brief, that the wagon was moving half as fast as the car, and that the car was moving at a speed of ten miles an hour, and that the distance from the property line to where the horses were when the car struck the wagon, is forty-seven feet; it took six and one-half seconds for the wagon to pass from behind the corner house and be upon the track. "The brief space of eight seconds," says the court in the case of Hemingway vs. Railroad Company, 50 Ann. 1087, "was too short a period to render his (the motorneer's) efforts available."

But this motorneer did not have full six and one-half seconds. He cannot be supposed to have been looking in the direction of Marshall street; he must be supposed to have devoted his entire attention to Crockett street. The side streets being opposite to each other he could not turn his face in the direction of one without turning his face away from the other; he had therefore to divide his attention between the two; which means that he had to devote his entire attention to the street he was traveling on. In other words, he, unlike

the occupants of the wagon, could not keep a sharp lookout at the corner. And even after the horses had fairly emerged from behind the corner building, say when their heads had reached the sidewalk line, he was not bound to divine the intention of the wagon to make straight for the track, and so divining have recourse at once to heroic measures for stopping the car; the natural assumption in such case was that the wagon would stop or turn aside. If a motorneer must, under penalty of negligence, or worse, assume that every vehicle or every pedestrian he sees moving towards the track will keep on the even tenor of their way and acting upon such assumption, must at once put on brake and reverse current—what becomes of rapid transit in cities? Taking these things into consideration, as must be done, it is seen that some deduction must be made from even the six and one-half seconds.

The preponderance of the testimony is that the gong was sounded. The motorneer and the conductor so testify and they are corroborated by a passenger on the car. Also by another witness, but this witness is impeached. *Contra,* there is the testimony of three of the occupants of the wagon; also of a lady and of Mr. Hoyer. The testimony of the lady is on its face unsatisfactory. That of the occupants of the wagon amounts to nothing at all, since experiments demonstrate that the noises produced by such a wagon coming down Marshall street at a trot would drown completely the sound of the gong of a car coming down Crockett street. Mr. Hoyer is positive that the gong was not sounded until just before the collision, and we are satified that he is sincere in making the statement; but Mr. Hoyer may well not have noticed the sound until his attention had been attracted to the car by the danger of the collision; besides, standing as he was, as near to the wagon as to the car, the noises of the wagon may have rendered less audible to him the sound of the gong.

The same lady who testified to the gong not having been sounded, testified to the conductor's having had his face turned toward her house, and not straight ahead of the car. The motorneer and the conductor deny this; and, as stated above, this lady's testimony is unsatisfactory on its face.

It is therefore ordered, adjudged, and decreed that the judgment of the lower court be set aside and that the plaintiff's suit be dismissed with costs in both courts.

Rehearing refused.