(63 South. 392.)

No. 19,557.

WOLF et al. v. NEW ORLEANS RY. & LIGHT CO.

(Oct. 20, 1913. Rehearing Denied Nov. 17, 1913.)

*(Syllabus by Editorial Staff.)*

1. STREET RAILROADS (§ 114*) — INJURY TO TRAVELERS—NEGLIGENCE.

Decedent, an active woman 71 years old, seeing a car she desired to take approaching, hurriedly attempted to cross the tracks in front of the car in order to reach the stopping place. She was unable to do so and was struck, receiving injuries from which she died. The car was not running rapidly, and the motorman testified that from the moment he saw that decedent and her companion intended to pass in front of the car he made every effort to stop; that he had already, about 80 feet away, shut off his power and put on his brake; and it also appeared that the car had come to a full stop one block before it reached the point of the accident; that it was loaded and could not have attained the speed of more than eight or nine miles an hour. *Held*, insufficient to establish negligence on the part of the railway company.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 239–250; Dec. Dig. § 114.*]

2. STREET RAILROADS (§ 81*) — INJURIES TO TRAVELERS—RULES—APPLICATION.

A rule of a street railway company requiring motormen to have their cars under control within 100 feet of a stopping place was a measure of precaution against collision with travelers on street crossings and was not intended to give more time to would-be passengers crossing the track in front of an approaching car.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 172–177; Dec. Dig. § 81.*]

3. STREET RAILROADS (§ 98*)—INJURIES TO TRAVELERS—CONTRIBUTORY NEGLIGENCE.

Where decedent, an active woman 71 years old, desiring to take a street car, rushed in front of it, when it was not more than eight feet away, to reach the stopping place, and being unable to cross in time was struck and received injuries from which she died, she was guilty of contributory negligence, and it was therefore immaterial that the railway company also might have been negligent in that the motorman did not have his car under control 100 feet before reaching the stopping place, as required by one of the company's rules.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 204–208; Dec. Dig. § 98.*]

4. STREET RAILROADS (§ 103*)—INJURIES TO TRAVELERS — CONTRIBUTORY NEGLIGENCE — LAST CLEAR CHANCE.

Where decedent, in passing in front of a street car by which she was struck and killed, was guilty of contributory negligence which continued up to the happening of the accident, and the motorman had no chance to avoid the accident after the danger became apparent, the doctrine of last clear chance was inapplicable.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. § 219; Dec. Dig. § 103.*]

5. STREET RAILROADS (§ 81*)—OPERATION OF CARS—SAND—FAILURE TO PROVIDE.

A street railway company was not negligent in failing to provide sand to prevent cars from skidding or the wheels from slipping on wet rails where the use of sand had been tried and found ineffective because of the damp climate.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 172–177; Dec. Dig. § 81.*]

Appeal from Civil District Court, Parish of Orleans; E. K. Skinner, Judge.

Action by Alice B. Wolf and others against the New Orleans Railway & Light Company. Judgment for defendant, and plaintiffs appeal. Affirmed.

Benjamin Y. Wolf and Thompson B. Walker, both of New Orleans, for appellants. Dart, Kernan & Dart, of New Orleans, for appellee.

PROVOSTY, J. The mother of the plaintiffs was knocked down by one of the electric cars of the defendant company as she was attempting to pass in front of the car intending to board it. Her skull was fractured from coming in contact with the pavement, and she died from this injury on the next day. The plaintiffs attribute the accident to the negligence of the defendant company and claim damages.

St. Charles avenue, down which the car was going, is very wide, having, besides the sidewalks, two asphalted carriage ways, with a grassed neutral ground between them. Upon this neutral ground are the double tracks of the defendant company's railroad. The downtown track, upon which the car was coming, is on the river side of the

neutral ground. The accident occurred at the intersection of Calliope street. The place for boarding the car is on the uptown side of this street and on the river side of the neutral ground.

The street uptown next above Calliope is Clio. The decedent lived on St. Charles avenue, in the block between Clio and Calliope, on the lake, or woods, side of the avenue. That is to say, as the car went down the avenue, the house of the decedent was on the left-hand side of the car, and the place for boarding the car was on the right-hand side of the car. Therefore, for boarding the car, the decedent, after leaving her house, had to go down to the Calliope street crossing and cross the avenue to the river side of the neutral ground; that is to say, had to cross the asphalted carriage way, and then the grassed neutral ground with the double tracks upon it.

[1] She was accompanied by her granddaughter, Mrs. Hotchstein. It was drizzling rain, and Mrs. Hotchstein was holding up an umbrella. They saw the car coming. Instead of following the sidewalk on their side of the avenue as far down as the Calliope street crossing, and then going squarely across the avenue, using the paved foot path across the neutral ground, they took a diagonal course, making straight for the stopping place of the car. They went together as far as the neutral ground; and then Mrs. Hotchstein, accelerating her pace and folding her umbrella, left her aged companion to follow the asphalt pavement down to the crossing and continued across the wet grass of the neutral ground her same diagonal course straight towards the place for boarding the car. She arrived in time for hailing the car. Whether she ran or continued in a fast walk after leaving her grandmother is one of the points upon which the testimony conflicts. How far ahead of the car she crossed the track is another point upon which the testimony is conflicting.

The decedent was 71 years old but very active for her age. As to exactly where she attempted to cross the path of the car, there is also contradiction. But, as she made the attempt, she was struck by the car and knocked down. She fell upon the track lengthwise with it, near the lake, or woods, side rail, her feet towards the car. After the car had come to a full stop, its front platform extended partly over her body, somewhat beyond the knees.

The motorman testifies that from the moment he saw that the ladies intended to attempt to pass in front of his car he made every effort to stop. That he had already, some distance back, about 80 feet, cut off his power and put on his brake. He is corroborated by two disinterested witnesses who, standing in the car just back of him, had the very best opportunity for observing, and also in part by another disinterested witness who was seated in the car.

On the other hand, Mrs. Hotchstein testifies that she reached the boarding place while the car was still at the downtown corner of Clio street, a block away. And in this she is corroborated by a lady who says that from a window on the opposite side of the street she observed the two ladies as they left their house and went to take the car.

On this point the preponderance of the testimony is with defendant, and also the probabilities, since the two ladies would hardly have taken a diagonal course, and Mrs. Hotchstein would hardly have walked across the wet grass, and, indeed, there would have been no occasion for the accident if the car had been so far as this and there had been so ample time for taking it. The fact of the matter is that the two ladies were going to the matinée and were already late, and were therefore anxious not to miss this particular car, and rushed headlong for it.

Our conclusion is that there was no negligence on the part of the defendant company in the operation of the car.

It is said that the speed of the car was excessive. But the evidence shows that the car had come to a full stop at Clio street, and that a car, especially when loaded as this one was, will not attain a speed of more than about eight or nine miles an hour within a block. And the testimony is very conclusive to the effect that the car was going at a moderate speed. Indeed, some of the passengers, who were going to the theater, were afraid that owing to its slowness they should be late.

[2] It is said that the motorman, according to his own statement, did not get his car under control by turning off his power and winding his brake until within 85 feet of the crossing, whereas, by a rule of the defendant company, he should have done so at 100 feet.

But granting, for the argument, that this rule has application when the car is not going at its full speed, as was the case in the present instance, the rule was not made for giving more time to would-be passengers for crossing the tracks in front of the car but as a measure of precaution against collision with travelers upon the cross street.

[3] Even, however, if this rule had been violated and negligence could be imputed therefrom to the defendant company, still the plaintiffs could not recover, in view of the contributory negligence of their mother. For certainly it was rashness itself for this old lady to attempt to pass ahead of this car in the way she did.

[4] And the doctrine of last clear chance invoked by plaintiffs can have no application to the case, since, in the first place, the motorman was left no chance, let alone a clear one, to avoid the accident after the danger had become apparent, and since, in the second place, that doctrine applies only where the contributory negligence has not continued up to the happening of the accident and thus been a proximate cause of it; and the decedent of her own free will walked upon the track, though she knew that the car was near.

[5] Complaint is also made that the car was not provided with sand to prevent it from skidding or the wheels from slipping on the wet rails. In the absence of even any suggestion that the car skidded or that its wheels slipped upon the rails, no causal connection is established between the accident and the nonproviding of sand. But, even if the use of sand would have avoided the accident, the failure to have provided it was not negligence, for the evidence shows conclusively that the use of sand in the operation of these cars was tried and found to be ineffective, for the reason that in our damp climate the sand cannot be kept dry enough to run, and therefore clogs, and is more of a hindrance than otherwise, since the time that would be consumed in applying it could be more usefully employed in using the other means for stopping the car.

The jury found against the plaintiffs.

Judgment affirmed.