CANAL STEEL WORKS, INC., v. CITY OF NEW ORLEANS (P. B. R. R.)

———

(November 13, 1928. Opinion and Decree.)

———

Feitel and Feitel, of New Orleans, attorneys for plaintiff, appellant.

W. McL. Fayssoux, of New Orleans, attorney for defendant, appellee.

WESTERFIELD, J. Plaintiff sues the City of New Orleans, as the responsible authority for the Public Belt Railroad Commission, for the sum of $1,080.82, as damages to an automobile truck alleged to have been cause by collision with a train negligently operated by the Public Belt. The damages are itemized as follows:

Repairs to truck _____$600.45
Removal of wreckage _____ 34.55
Hire of truck during time occupied
  in repairing plaintiff's truck _____ 445.82

Defendant denied all negligence imputed to it and alleged that the accident was entirely due to the fault of plaintiff. There was judgment for defendant and plaintiff has appealed.

At the time of the collision plaintiff's truck was parked on a switch-track of the Public Belt, within the private yard of plaintiff, a manufacturing concern located on the Industrial Canal, in the City of New Orleans. The train which struck plaintiff's truck consisted of nineteen freight cars, manned by an engineer, a fireman and two switchmen. It ws engaged in a backing movement and proceeded very slowly, some three or four miles per hour. After striking plaintiff's truck, it proceeded some little distance, pushing the truck before it and crushing it against a pontoon tank, which was in the yard.

Four witnesses, testifying for plaintiff, say, that there was no switchman on the lead car, at the time of the collision, but that the switchman came running to the scene of the accident after the train had collided with plaintiff's truck.

The train crew testified that the switch-man was on the lead car, where he should have been, until the imminent danger of the collision made it necessary for him to jump. Mr. Ludwig, president of the plaintiff corporation, testified that the switch-man told him immediately after the accident that he had jumped from the train as it crossed Galvez Street, which is some 250 feet from the point where the truck was struck, after signaling the engineer to stop, and discovering that the brakes would not catch, because of the slippery condition of the track and failure of the sand brakes to operate. The switchman contradicted Mr. Ludwig and corroborated other members of the train crew. He also testified that the train was going very slow, and that when he observed the truck he first signaled the engineer to slow down and then gave him a "washout signal," meaning an immediate stop signal; that he gave this washout signal when about fifty or seventy-five feet from the truck. The engineer testified that he got both signals, alleged to have been given him by the switchman, receiving the wash-out signal when about sixty feet from the truck; that when he got this signal he was going about three or four miles per hour, and at that speed, it was very easy to stop his train, notwithstanding its length, and that he could stop at that speed within twenty-five feet.

Without resolving the conflict of evidence concerning the position of the switchman, just prior to the accident, we have no difficulty in finding that the train crew were negligent, in that they failed to stop the train in time to avoid the accident, notwithstanding the fact that the truck was in plain view for a distance nearly three times greater than that required for stopping the train. Defendant's negligence is not seriously disputed, the contention being that plaintiff was negligent in parking his truck on the switch-track of the Public Belt, and leaving it there, without a driver, and that this negligence continued up to the time of the collision and contributed to it; that in this situation the doctrine of last clear chance can have no application, the plaintiff's contributory negligence barring recovery, citing Cowden vs. Shreveport Belt Railway Company, 106 La. 236, 30 So. 747; Wolf vs. N. O. Ry. & L. Co., 133 La. 891; Castile vs. O'Keefe, 138 La. 479, 63 So. 392; Chargois vs. M. L. & T. P. R. R. & S. S. Co., 148 La. 637, 87 So. 499; Vappi vs. M. L. & T. R. & S. S. Co., 155 La. 183, 99 So. 31, and others.

Conceding, for the sake of argument, that the plaintiff was negligent in placing its truck upon the switch-track of the defendant railroad within its private yards, the doctrine invoked and more or less sustained by the authorities cited can have no application. The case at bar, we believe to be within the exception of the contributory negligence rule and within the doctrine of the last clear chance. Plaintiff's truck was without an attendant and was left standing upon the track of the defendant railroad. It was, therefore, an inanimate object, without the capacity of locomotion and incapable of exercising any discretion called for by any impending emergency. In McClanahan vs. V. S. & P. Ry. Co., 111 La. 781, 35 So. 902, and in Blackburn vs. L. R. & N. Co., 144 La. 520, 80 So. 708, the Court permitted the heirs of a drunken man to recover, though when struck and killed by the train, both plaintiffs were either sitting or lying upon the tracks of the railroad in a condition sometimes referred to as "dead drunk."

In the latter case, Justice Dawkins, after first denouncing the conduct of plaintiff in getting drunk and placing himself on

the track as the grossest negligence, said "his active negligence in placing himself upon defendant's track was spent, and he was then in a state of what we would term, passive negligence."

In Alexandria Refining Co. vs. Mo. Pac., 1st Louisiana Appeal 470, a case strikingly similar in its facts to the case at bar; a case in which a truck unattended by a driver was run into by a backing train, Judge Carver on rehearing, after quoting the McClanahan and Blackburn cases and others, said:

"We think this case governed by the doctrine of those decisions and not by that applied in the cases cited by defendant; believing as we do that the truck was and for some time had been halted on the track when backed into by defendant's train whose crew was negligent in not discovering it and actively so in backing against it, when such negligence, therefore, being the proximate cause of the accident, while the negligence of the truck driver, though continuing down to the moment of the accident, was at that time merely passive and hence not the proximate cause but only a condition of the accident."

In our opinion, this case turns upon the failure of the train crew to stop the train in time to avoid the accident. The truck was seen, or it should have been seen (the accident occurring in broad daylight), in time to avoid colliding with it. The engineer testified that he received the washout signal in ample time to stop the train, and not only failed to do so, but did not stop until he had pushed the truck some little distance, jamming it against an obstruction in the yard. Whether plaintiff was or was not negligent in leaving his truck upon the rails of the defendant railroad, there was ample opportunity, after the discovery of the position of the truck, to avoid the accident. The defendant had the last clear chance to avoid the accident.

No discussion of the quantum of damages was indulged in, in argument, nor do we find any in the briefs. The amount asked for by plaintiff seems to us to have been properly proven, and it will, therefore, be allowed.

For the reasons assigned the judgment appealed from is reversed, and it is now ordered that there be judgment in favor of the plaintiff, the Canal Steel Works, Inc., and against the defendant, the City of New Orleans, in the sum of $1,080.82, with legal interest thereon from judicial demand until paid.