No. 453

First Circuit

———

WHIPPLE v. LIRETTE

———

(October 10, 1929. Opinion and Decree.)

———

Caillouet & Caillouet, of Houma, attorneys for plaintiff, appellee.

Harris Gagne, of Houma, attorney for defendant, appellant.

ELLIOTT, J. Mrs. Seraline Falgout Whipple, wife of Walter Whipple, was knocked down and badly injured by an automobile driven by Melvin Lirette, unemancipated minor son of the defendant, Emile Lirette, residing wth him. She claims damages of Emile Lirette on account of her injuries. An exception of no cause

of action, based on the alleged fact that her alleged injuries were caused by the negligence of his unemancipated minor son was overruled. Defendant urges the exception in this court.

The exception was properly overruled. The law makes the father responsible for the damages occasioned by the fault of his unemancipated son residing with him. C. C. Art. 2318. Marionneaux, tutrix vs. Bringier, 35 La. Ann. 13; Mullis vs. Blaise, 37 La. Ann. 92; Rush vs. Town of Farmerville et al., 156 La. 857, 101 So. 243; Allen vs. Currie et al., 8 La. App. 30.

The plaintiff alleges that she was injured as a result of the grossly negligent and wantonly reckless driving of defendant's son.

Defendant denies the negligence and recklessness, etc., alleged against his son. He avers that his son saw the headlights on the Villavasso car, upon crossing the intercoastal canal at Bourg, 250 feet below the Whipple residence, but thought it was coming toward him. And as it was on the wrong side of the road, he expected every moment to see it turn to the other side. That his son continued his course until it was apparent that unless one of the cars deviated from its course, a head-on collision was inevitable. That confronted with the exigencies of the situation his son took the ditch on his right rather than violate the rules of the road by passing the apparently approaching car on the left.

That his son discovered after the accident, that the apparently approaching car was in reality stopped in front of the Whipple residence on the wrong side of the road for its parking, and that the occupants were in conversation with Mrs. Whipple at the moment of the accident. That the course adopted by his son in the effort to avoid a collision was a judicious exercise of sound discretion.

The answer does not allege that standing on the bridge was an act of negligence on the part of the plaintiff. His contention is that his son did not know, and could not have known, when he turned to the right and took the ditch that plaintiff was standing on the bridge which spanned the ditch. That it was not a fault on his part to turn to the right under the circumstances; that such is the law of the road. That the real cause of the accident was the car parked on the wrong side of the road, with which his son had nothing to do.

We do not understand defendant to contend that it would not have been his duty to turn to his left in order to pass a car that he knew was parked, but that it was not his duty to turn to his left in order to pass a car that he supposed was running, coming toward him.

The following facts are admitted, or not denied by the answer, and therefore under the pleading Act 157 of 1912, section 1 (amended Act 27 of 1926) may be regarded as admitted. Other facts stated were established without dispute. The occurrence in question took place after dark in front of plaintiff's residence at about 7 o'clock P. M., on November 1, 1927. Plaintiff's residence is situated fronting on the left or descending side of the highway which leads from Houma past Bourg and on to Montegut. The highway in question is gravelled in front of her residence to the width of 22 feet. A road drainage ditch approximately 8 feet wide and 3 feet in depth runs in front of her home between her front gate and the highway parallel

with the highway. The outer side of the open highway, a strip about two feet in width, next to the ditch is not gravelled.

A foot-way leading from plaintiff's residence to the highway crosses the intervening ditch by means of a wooden bridge. This bridge was between 8 and 10 feet long and about 3½ feet wide. Its end next to the highway rested on the dirt shoulder which formed the bank of the ditch. The plaintiff was not in the road when struck, but was standing on the bridge over the ditch about half way across the ditch talking to Mr. and Mrs. Villavasso and their daughter, who were seated in an automobile headed down the road toward Bourg, which they had stopped on the left or descending side of the road in the direction they were going, and which for them was the wrong side of the road. The front door of their automobile was about two feet from the end of the bridge and close to the outer edge of the gravel. The middle of the automobile was about opposite the bridge, the engine and front part below, and the rear end above it.

Melvin Lirette and three companions were driving up the road. They had just passed Bourg and were going on to Houma. They were therefore going in the opposite direction in which the Villavasso car was headed. The Lirette car was on the right side of the road, the side on which it belonged, in the direction it was going. The road contained a slight curve which commenced about 500 feet below the place in question and extended about the same distance beyond same, which however, did not prevent anybody from seeing the Lirette car that might be coming in the road, unless the party coming had been immediately behind the parked car. Therefore the question is, whether, under the established facts, plaintiff's injuries may be said to have been the direct and proximate result of the wanton, reckless and careless conduct of defendant's son, as provided by the law, Civil Code, Art. 2315, etc.

Elliott on Roads and Streets, 3rd Ed., sections 1079-1080, 1081, 1082, pp. 618-619-620-621 has this to say relative to meeting, passing and stopping:

"It is a general rule that one may travel upon any part of highway not occupied at the time by another, but if he meets another traveler whom he desires to pass, or who desires to pass him in either direction, there are certain rights and duties which each must observe in order to avoid a collision.

"The first and most important rule is, that in meeting, each party shall bear or keep to the right. If there is no statute on the subject proof of this custom is not necessary, for the court will take judicial knowledge of it.

"This rule requiring travellers who meet, to pass to the right, is not an inflexible one, and there may be circumstances requiring one to keep to the left in the particular case. Emergencies may arise where, in order to escape from danger to one's self, or to prevent injuries to others, it will not only be excusable, but perfectly proper to temporarily violate the general rule.

"One who violates the law of the road by driving on the wrong side of the way assumes the risk of all such experiments, and must use greater care than if he had kept on the right side of the road. If a collision takes place the presumption is generally against the party on the wrong side. Especially is this true where the collision takes place in the dark. But the mere fact that one is on the wrong side of the road in violation of the law, gives another no right to neglect all precautions, and if by the exercise of ordinary care the latter might prevent a collision, notwithstanding the fault of the former, but fails to do so, he has no cause to complain. So while the fact that one that is on the

wrong side of the highway is to be considered, and may make a prima facie case of negligence against him, it is not necessarily conclusive."

Most of the above provisions were quoted approvingly by the Supreme Court in Schick vs. Jenevin, 145 La. 333, 82 So. 360; Potter vs. Glassell, 146 La. 687, 83 So. 898, is to the same effect.

In the recent case of Mrs. Hazel Kennedy, individually and as tutrix vs. F. M. Opdenweyer, 121 So. 636, this Court recognized the right and the duty of a party to leave his side of the road and get on the other side, in an emergency made necessary by the wrong driving of another party in order to avoid a collision.

In Thompson on Negligence, Vol. 1, Sections 1286, 1287, pages 1138-1139-1140-1141, the general doctrine is about the same, quoted from the author first mentioned. We will only excerpt the following:

"But the failure to keep on the right in conformity with this rule is not the criterion of negligence." In another place it is said to be "not negligence per se, nor does it necessarily make him answerable for damages in case of a collision. But it is a circumstance to go to the jury as evidence of negligence, for there may be circumstances making it excusable and even proper to drive to the left as where a driver having occasion to stop on the left side of the road turns his team in that direction for that purpose." It depends on the need, purpose, occasion, etc.

In Ruling Case Law, Vol. 13, subject Highway, Section 222, p. 270, that author, recognizing the same general rule on the subject of stopping on the wrong side says:

"These rules are however not inflexible, and a strict observance should be avoided when there is a plain risk in adhering to them. And one who too closely adheres to such rules when the injury might have been averted by variance therefrom, may be charged with fault. A traveller may not remain stubbornly and doggedly upon the right of the travelled part of the highway and wantonly produce a collision which a slight change of position would have avoided, and to do so will amount to contributory negligence which will preclude a recovery for injuries thereby sustained.

"The exception to the rule of the road depends upon the special circumstances of the case, and in respect to which no general rule can be applied."

In Blashfield's Cyclopedia of Automobile Law, Vol. I, Section 18, page 412, it is said that the driver of a vehicle who has drawn up to the curb on the left-hand side is not, while remaining stationary and engaged in conversation with someone on the curb, a traveller, within the meaning of the law which requires travellers meeting each other to turn to the right in order to pass.

In Campbell and Wife vs. Haas, 2 La. App. 753, the collision took place after dark. The plaintiffs alleged that Miss Campbell was standing in the road behind the car which was struck and knocked against her, and that the defendant was driving on the side of the road on which he belonged to be. The syllabus sets forth the majority opinion of the court as follows:

"A petition which states that the automobile of the plaintiff was standing on the left side of the road, with the headlights burning bright, while its tire was being fixed, when the defendant negligently ran into it, killing the plaintiff's daughter, states a cause of action, as it does not show the plaintiffs to have necessarily been negligent."

In the Campbell case, the plaintiff's daughter was the guest of the party driving. It was urged in that case that the defendant could not be supposed to have

known that the car in his front was parked. That he had the right to act on the assumption that it was coming towards him, and would in due time turn out, and get on the side on which it belonged to be.

The Campbell case was before this Court on the merits, 4 La. App. 435, and it was held in a majority opinion that defendant's driving was negligent and that he was liable in damages to the parents of the young lady killed as a result of the same.

Under the law of the road and the facts in the present case, the fact that the Villavasso car was parked on the wrong side of the road, and defendant's son, turning still further to his right struck plaintiff in his effort to miss it, is not sufficient to exonerate defendant's son from negligence, nor defendant from liability.

The law of the road, according to which the party driving a vehicle keeps to the right in the direction he is going, is intended to facilitate and make it easier and safer for vehicles meeting, to pass each other in the road. It is not a hard and fast requirement, under which, a party driving on the right side of the road is justified, upon seeing a vehicle facing and headed toward him stopped on the wrong side of the road, in turning further to the right and out of the road when there is a party standing out of the roadway, near the parked vehicle that he should have seen and would strike by turning out of the road in that direction, the roadway in front of him to the left of the parked car being open and the opening of ample width for him to pass, and no one in sight coming in the road meeting him. He must in such a situation keep in the road.

It is the custom of the road, that if a vehicle approaches another stopped in the road ahead, coming toward him, or headed in the same direction the party is going, such party must temporarily leave his side of the road, if the other side is open and nobody coming on that side will intercept him, and pass the parked vehicle on the side that is open, and then return to the side which custom prescribes. And if the road is not open on either side, a party must stop until it becomes so that he can pass without striking anybody standing where they have a right to be.

Melvin Lirette admits, and the other occupants of his car who were called as witnesses in his behalf, also admit, that the road to the left of the Villavasso car was open; that nobody was in sight coming. That the width of the road to the left of the parked car in the direction in which they were going was fully fifteen feet over and beyond the space occupied by the Villavasso car, and that their car, had it turned to that side would have passed that way without hurting anybody. Mrs. Whipple did not see the approach of the Lirette car. She says:

"I had started to my house; I had gone out on my plank-walk to speak to some friends, Mr. and Mrs. Villavasso, and I was standing on my plank-walk right near the gate and all at once I heard a noise, and the next I knew, they came and picked me up on the side of the ditch. That is all I know. I didn't see any car coming, or nothing at all. I just heard that and then I was down in the side of the ditch."

She further testified without denial on the part of the defendant, that she was standing on the walk or foot bridge at the time she was struck, over about the middle of the ditch.

Mrs. Villavasso, referring to herself, husband and daughter, says that they were seated in their car. That Mrs. Whipple was standing on the bridge talking to them. That the door of their car was about even with the bridge. That she saw defendant's car coming at a terrific rate of speed and headed directly in front of them. That it came on and hit their tire on the left side, jumped the ditch or into the ditch, hit the bridge Mrs. Whipple was standing on and kept going. Miss Villavasso testified as did her mother, but says in addition that several cars passed them while they were there. That she felt spellbound on seeing the speed at which the oncoming car was approaching them, without slackening, looking as if it was going to hit them.

Melvin Lirette and two of his companions in the car, one of whom was seated with him on the front seat, agree in their statements that they saw the lights of the Villavasso car in front of them when they got on the Bourg bridge. That the lights were then distant from them about an acre; one of them says an arpent, and was on the wrong side of the road. The distance may be estimated at about 210 feet. That they thought it was a car coming, and would move to the right and give them the road. That they didn't discover that it was parked and not moving until they got within about 20 feet of it. That the brakes were then applied, the car slowed down and turned to the right taking the ditch. That they approached what they supposed was an oncoming car at about 25 or 30 miles an hour. Melvin Lirette's reasons for not turning to the left of the parked car will best appear from what he himself says:

Cross-examination:

"Q. When you realized it was stopped, then why didn't you pass on the other side of that car?

"A. I didn't have to pass. I had to keep to my right.

"Q. Could you have passed on the other side?

"A. I could have passed, yes.

"Q. How could you keep to the right with this car immediately in front of you?

"A. I was supposed to keep to my right.

"Q. How could you, don't you know that you couldn't?

"A. He had his bright lights on and I was not supposed to turn to his right.

"Q. But he was parked, he was stopped there.

"A. Yes, when I had to pass.

"Q. When you realized he was stopped right in front of you, how could you keep to the right with him in front of you?

"A. I took the ditch, I went to the ditch.

"Q. But you could have passed to the other side, there was plenty of room?

"A. Yes."

Further direct examination:

"Q. Then why did you turn to the right and take the ditch?

"A. That's what I was supposed to do.

"Q. That was your understanding of the law of the road?

"A. Yes, sir."

He further testified that he was looking at the ditch when he drove into it, and in one place says that he saw the bridge, but almost immediately afterwards, says that he didn't see it.

The other two say that they did not see the bridge and that when they got within about 20 feet of the parked car its lights blinded them; that they were not blinded previous to that time.

The speed of the Lirette car can be appreciated by taking its striking power into account. The brakes were applied, say 25 or 30 feet distant from the parked car. It went forward under its brakes and

struck the parked car with such force that it exploded its left tire, bent its fender, then struck the bridge on which Mrs. Whipple was standing. It struck and knocked Mrs. Whipple ahead into the ditch about 20 feet distant from the place of impact. It also knocked the bridge, which was a structure about 8 or 10 feet long and about 3½ feet wide, composed of two sills, in size about like joists and to which planks were nailed for cover, about 10 feet from the place where it had rested. The car and the bridge went forward together; both fell in the ditch, the car on top of the bridge.

The car was a Ford sedan, a light make, consequently it must have been running at a terrific speed for it to have struck with such force.

Defendant's son knew that it was dark and that he was liable at any moment to come to a car stopped on his side of the road, and that whether it was coming toward him, or headed in the opposite direction he was going, that he would have to pass to the left of it if he kept in the road, and that if somebody else should be coming in the road behind it and about to pass it, that it would be necessary for one of them to stop, and that it might be necessary for him to do so.

He saw the Villavasso car ahead on his side of the road in his immediate front about 210 feet distant and knew that at the speed he was running, that getting to the place where it was, no matter whether it was stopped or running toward him, was a matter of but little more than a second in point of time. The headlights on his own car, as well as those on the parked car, were all showing bright. Therefore, if defendant's son did not see the open ditch on his immediate right, about

8 feet wide and 3 feet deep, the bridge ahead, Mrs. Whipple standing on it, and the open unobstructed roadway ahead to the left of the parked car, he should have done so. It was due to his gross want of care in driving that he didn't. The headlights of the car ahead, which he supposed to be coming, were on his side of the road, and was a warning to get his own car under control, because he knew that the car might just as well be stopped and therefore could not move out of his way.

But he kept his own car going forward at full speed, taking no precaution, in effect, driving blindly and without power to act intelligently and as the situation ahead required.

The plaintiff was not in his way; she was not in the road, but was in a place where she had a right to be. If defendant's son had not turned out of the road on her, she would not have been injured. Defendant's son knew or should have known, that to turn out of the road to his right, was to turn into the ditch. It was a serious fault and a grave want of care to drive at such a rate of speed and with such little attention to things ahead and which he should have foreseen, that he rendered it impossible for him to do the thing which the exigencies of the case required. It was his want of care in the way stated that resulted in the injury of the plaintiff.

The Act 226 of 1926, in force at the time of the occurrence, has been repealed by Act 297 of 1928.

In Blackburn vs. La. Ry. & Navigation Co., 144 La. 520, 80 So. 708, it was held:

"Railroads can not run their trains through thickly populated towns and cities and by stations and places known

to be frequented by people at such a high speed, that the employees do not see, what by the exercise of ordinary care they should see, and then escape liability because of inability of employees to stop the train when danger is actually discovered.

"Only such speed of railroad trains should be maintained under such circumstances as will enable trainmen with the light available, whether natural or artificial to see persons or objects on tracks and by the use of modern appliances, to stop and avoid striking, if the necessity should appear to a reasonable mind."

In Southall vs. Smith, 151 La. 987, 92 So. 402, 403, 27 A. L. R. 1194, the Court said:

"An automobile driver can not put himself in a position where in order to save himself, he must run into somebody else and then plead that he could not help it and is therefore not liable."

In Kelly vs. Schmidt & Zeigler, 142 La. 91, 76 So. 250, it was said:

"The chauffeur of an automobile truck, driving over that portion of the public highway which is ordinarily used by vehicles going in the opposite direction, must keep a very vigilant watch ahead for vehicles and pedestrians. He should signal his approach as a warning, and when it is dark or nearly so, the lights on his vehicle should be burning.

"He should proceed slowly and cautiously and at the first appearance of danger, he should take proper steps to avoid it, and if necessary stop his machine and even his motor when it is necessary and practicable. He will be presumed, in case of accident, to have seen, what he should have seen in the performance of his duty."

See also Campbell and Wife vs. Haas, 4 La. App. 435; Parlongue vs. Leon, 6 La. App. 18.

It was held in Odom vs. Schmidt, 52 La. Ann. 2129, 28 So. 350, 351:

"It is negligence to drive into a vehicle while standing still and on the side of the roadway, when there is ample room to pass without colliding with it. If there is not room to pass, it is the duty of the driver of the approaching vehicle to stop and call out to the driver of the other vehicle to move out of the way."

The latest authors say that when the driver of an automobile is blinded and can not see objects in the road ahead of him, the speed of the car must be so slow, that he can stop almost immediately.

R. C. L. Permanent Supplement, Vol. 1, Subject: Automobiles, sec. 12, p. 643 and sec. 29, p. 658.

Blashfield's Encyclopedia of Automobile Law, Vol. 1, Subject: Speed and Control, Chapter 16, p. 318, and Stopping to Avoid Collision Chapter 17, p. 362.

In Jacobs vs. Jacobs, 141 La. 273, 74 So. 992, the Court said:

"As a general rule it is the duty of the driver of an automobile to maintain a speed sufficiently slow and to have such control over his car that he can stop within the distance in which he can plainly see an obstruction or danger ahead.

"But that rule does not apply to a case where a dangerous situation which the driver of an automobile has no reason to suspect, suddenly appears immediately in front of his car."

In that case the sudden appearance was an open canal across one of the streets of the city of New Orleans, with which street the driver was familiar from frequent use and on which he was driving at night. The canal had been spanned by a bridge, but the bridge had been, unknown to him, taken up and the canal left open.

In this case defendant's son met no surprise of that kind. He encountered only

what he might have reasonably expected.

The District Judge prepared a well considered opinion in the course of which he says:

"The moment that the failure of the other car to swerve to its right and the decrease of intervening space between the two vehicles became such as to make further progress a matter of risk, it became his duty to note the recklessness of the other car, to recognize the possible danger of the situation, and to busy himself in guarding thereagainst.

"In the view of the Court, that contingency arose before he was within 25 feet of the other car."

The judgment against the defendant is in conformity with the law and the evidence.

The appellee urges in her answer to the appeal, that the amount allowed in the lower court should be increased to $2500.

The plaintiff has suffered severe injuries and endured long and excruciating pain. She had not fully recovered at the time of the trial, about a year after the injury. The lower court awarded her $2000. We do not think the amount should be changed.

Judgment affirmed, defendant to pay the costs in both. courts.

---

### CONCURRING OPINION

In the case of Campbell vs. Haas, decided by this Court, reported in 4 La. App. 435, it was shown that Miss Maginly who was driving her car northward towards Opelousas had crossed the road from the right to the left side where she had parked the car near the ditch, temporarily, for repairs. It appeared that the lights on her car were shining brightly. Mr. Haas, the defendant in the case, it was shown, was driving southward from Opelousas on his right-hand side of the road where the Maginly car had been parked, as before stated. He ran his auto into the Maginly car, killing Miss Campbell for which he was held liable in damages. The record showed that defendant, after he saw that the Maginly car had been parked on his side of the road, could have safely passed it on his left-hand side and could have thus avoided the· accident. He explained that he did not swerve to his left because he thought another car was coming on his left side from behind the Maginly auto. As it .appeared, however, that no car was coming from that direction and that there was nothing that could have conveyed such an impression, it was held that he was at fault for not negotiating the Maginly car by swerving to his left where he had ample room to pass.

Under those circumstances the majority members of the Court found that he had not met the requirements of the situation by driving on the side of the ditch where the Maginly car was parked, hitting it, which resulted in the killing of Miss Campbell who was standing at the time behind the Maginly car.

In the instant case, the minor, Melvin Lirette, who inflicted the injury, says that after he realized that the Villavasso car was stopped or parked on his side of the road, that he could have passed to the other side of that car as "there was plenty of room" and which statement is sustained by the evidence. He admits that he would have avoided the collision if he had swerved to his left after he had realized that the car was parked, but that he "took the ditch" which the evidence shows, resulted in the injury of plaintiff who was standing on the bridge that spanned the ditch.

In Tyer vs. Gulf, C. & S. F. Ry. Co., 143 La. 178, 78 So. 438, the Court said that in order to enforce the doctrine of the "last clear chance," "it must appear that plaintiff has clearly shown that defendant after seeing the danger could by the exercise of ordinary care have avoided the injury, or, if defendant did not see the danger * * * he might by the exercise of ordinary care have seen the danger in time to avoid the injury."

Here, it does not only clearly appear that defendant had had full opportunity to see the danger in time to avoid the collision, but that he actually saw the danger in time, and admitted that he could have avoided the accident if he had passed to his left where he had ample room on that side of the roadway. There is not the slightest proof or intimation in the record, to the effect that another car was coming in the direction of defendant from that side of the road, or that he was laboring under such an impression, when he deliberately plunged his car in the ditch, and struck the Villavasso car, at the same time by running against the bridge on which plaintiff was standing, inflicting the damage complained of.

If at the time another car had been coming towards Melvin Lirette on his left side or that anything existed which could have created such an impression in his mind, in such an event, an emergency would have arisen which would have exonerated him or rather his father from responsibility, because under such circumstances, a collision with the Villavasso car or the car coming would have been inevitable. There was, however, no car coming towards Lirette. The proof is that his way was clear to his left for an easy passage on the side of the Villavasso car, and that according to his own evidence the collision would not have occurred had he followed that course which was open to him. Under the existing circumstances re was nothing that demanded that he should imperil his own life, as he had an open way to his left by plunging to his right into that ditch, and which could only result, and as it actually resulted, in a collision with the Villavasso car. It can not be said that in thus driving into the ditch at the almost certain peril of his own life, and with the practical inevitable certainty of a collision with the Villavasso car, that Lirette exercised ordinary care. The exercise of ordinary care demanded that he should have swerved to his left and thus have avoided the possibility of a collision with the other car or any accident. He was required under the humanitarian doctrine of the "last clear chance" in the exercise of ordinary care to have negotiated the other car by passing to its left as before stated.

The driver of defendant's car said in his testimony he thought he was compelled under the law of the road to swerve his car to his right into the ditch. In this respect he was mistaken "as the driver of a car is not negligent in driving to the left of the road in trying to avoid an accident." Smith vs. Interurban Trans. Co., 5 La. App. 704; Williams vs. Garcia, 2 La. App. 56.

If the accident had occurred during the daytime, Lirette, upon realizing the danger ahead of him, would unquestionably, under the rule of the "last clear chance" have been required to pass the Villavasso car by veering to his left side. The accident, it is true, happened at night, but as he had realized the existence of the impending danger in time, the same reasoning applied, and required him to pass to s left and thus avoid the collision; hold-

ing otherwise would establish the rule that the driver under no circumstances should be permitted to swerve to his left whatsoever might be the consequences, and which would be destructive of the doctrine of the "last clear chance" in cases of this character. Lirette, it seems, was prompted by an honest impulse in driving his car on his right side into the ditch and against the bridge upon which plaintiff was standing next to the Villavasso car, thus inflicting the damage of which plaintiff complains. If a moral issue only was involved the defendant would be entitled to exoneration, but as it involves the enforcement of the "last clear chance" rule, it must be held that Lirette failed to exercise the ordinary care which devolved upon him under the circumstances.

The proof shows that the Villavasso car was parked on the wrong side of the road. It also appears that Villavasso was in the car with his wife and daughter at the time of the collision. Villavasso was therefore guilty of contributory negligence which continued to the happening of the accident, was also at fault, and would have had no right of action against defendant. Canal Steel Wks., Inc., vs. City of N. O., 9 La. App. 575, 121 So. 773; Blackburn vs. L. R. & N. Co., 144 La. 520, 80 So. 708; Cowden vs. Shreveport Belt Ry. Co., 106 La. 236, 30 So. 747; McClanahan vs. Vicksburg, S. & P. Ry. Co., 111 La. 781, 35 So. 902; Wolf vs. N. O. Ry. & L. Co., 133 La. 891, 63 So. 392.

There is nothing to show that plaintiff, a third party, contributed in any way to the accident. The proof is that she was standing on a bridge spanning a ditch in front of her home when she was run into by defendant's car. She had not exposed herself to danger, and had a perfect right to be where she was standing at the time.

In Thompson on Negligence, Vol. 1, section 75, the rule governing the right of third persons in such cases is well stated, as follows:

"If the concurrent or successive negligence of two persons combined together, results in an injury to a third person, he may recover damages of either or both, and neither can interpose the defense that the other contributed to the injury."

This rule was recognized in a very able, exhaustive and interesting opinion by Mr. Justice Thompson, in the case of Appalachean Corporation, Inc., vs. Brooklyn Cooperage Co., 151 La. 41, 91 So. 539. It is unnecessary for us to reproduce the reasonings of the court in that case, in which it is distinctly held on the authority of many citations that the third person thus injured may sue either of the wrongdoers or both at his option, and may recover damages against the one who is only technically a joint wrongdoer, leaving to him the right to recoup himself against the wrongdoer primarily responsible for the accident.

I find that Lirette failed to exercise the ordinary care of a prudent man under the attending circumstances and was therefore negligent or at fault.

Whether primarily or secondarily responsible plaintiff had the right to recover against defendant.

I therefore concur in the finding, holding him liable in damages and in the amount decreed.

LECHE, J., dissenting. The facts in this case are not much in dispute. Defendant's visitors had parked their car on the left side of the road, where they had a right to park, but negligently left the headlights

of their automobile brilliantly shining, so that a chauffeur approaching from the opposite direction was bound to presume that the car was moving and that under the undisputed rule of the road he had to pass to the right of such headlights.

It is impossible at night, in the face of two shining headlights to know at what speed the incoming car is moving, but the presumption is irresistible that it is moving, otherwise why the use of the headlights. If he had passed to the left, the chauffeur would be negligent and liable for damages in case of a collision and it was his clear duty to drive to the right. Counsel in arguing the case, assumed that the chauffeur of defendant could see that the visitors' car was stopped. That statement, in my opinion, is not supported by the evidence and is contrary to the logic of the situation. Of course, if defendant's chauffeur had known that the visitors' car was stopped it would have been his duty to also stop or pass to the left, but such is not the case. He only realized that defendant's car was stopped when he got to it, too late to avail himself of the last clear chance.

The negligence which brought on the collision was that of plaintiff's visitors (whom she should have sued) and not the negligence of defendant's chauffeur.

The concurring opinion virtually concedes that parking an automobile at night on the left side of the road, with its headlights at full brightness and focused on the road ahead, is a snare by which the most prudent driver of an incoming automobile may be entrapped, and it follows that such act constitutes negligence. But I do not believe that defendant's chauffeur was able to realize the true situation until it was too late to avail himself of

the last clear chance. I therefore respectfully dissent.