No. 710

First Circuit

———

DENHAM ET AL. v. TAYLOR ET AL.

———

(December 1, 1930.   Opinion and Decree.)
(January 26, 1931.   Rehearing Refused.)
(March 2, 1931.   Writs of Certiorari and
    Review Refused by Supreme Court.)

———

Paul G. Borron and Jess Johnson, of Baton Rouge, attorneys for plaintiffs, appellants.

Taylor, Porter, Loret & Brooks, of Baton Rouge, attorneys for defendant, appellee.

Sachse & Breazeale, of Baton Rouge, attorneys for defendant, appellant.

MOUTON, J. Guy D. Denham and his wife are suing David H. Taylor and Joe D. Millender in solido for the sum of $23,-360 in damages for the death of their daughter, Miss Annie Eunice Denham, which resulted from the collision, at the intersection of St. Napoleon and North Boulevard streets of the city of Baton Rouge, between a Ford coupe Millender was driving and a Dodge sedan which Robert C. Taylor, minor son of David H. Taylor, Jr., was driving.

The accident occurred between the hours of 12 and 1 a. m. on Thanksgiving Day, November 28, 1929.

Judgment was rendered for $5,000 in favor of plaintiffs against Millender, and dismissing the demand as to Taylor.

Plaintiffs and Millender appeal.

There was a dance at the community club in Baton Rouge on the night of November 27th, which Miss Annie Denham had been invited to attend by Clarence W. David, a young man of the city of Baton Rouge. David not having a car to escort her to the dance, at his request, Millender agreed to call at her home to take her there in his car. They proceeded to her home in Millender's Ford coupe, where David got down, and in company with Miss Denham came up to the car, was introduced to Millender, who drove them to the community club. Millender danced once or twice with her and left to get a young lady he was to escort to the dance. She was unable to attend, and Millender returned without her to the club. The dance having stopped for the usual midnight intermission, Millender again met David and Miss Denham and stated that he had failed to "get his date" with the young lady he intended to take to the club. At David's suggestion he said he would be glad to take them for refreshments down town, to which Miss Denham promptly agreed. They got in Millender's car, David on the right side, Miss Denham in the middle, and Millender on the left driving. As the place where they intended to get the refreshments was closed, they did not stop there, and Millender was heading back to the dance hall when the accident occurred at the intersection of St. Napoleon street with North Boulevard.

North and South Boulevards run east and west through the city of Baton Rouge, along a neutral ground 69 feet wide, between the boulevards. St. Napoleon street, 29 feet in width, runs north and south at right angles across South and North Boulevards, and the neutral ground, continuing to the north across the North Boulevard driveway, and thereafter known under the name of St. Anthony street.

Millender drove his car around the state house into South Boulevard, going eastward up to St. Napoleon street, where he turned northward, crossed the neutral ground, and, when about the center of North Boulevard or perhaps a little beyond, north thereof, his coupe was struck on the rear right wheel and running board

by the sedan Taylor was driving westward on North Boulevard.

It is contended by Millender that Miss Denham was with him as his guest, in a joint venture or common enterprise, and that he is not therefore liable to plaintiffs.

It is shown that Miss Denham had been invited to the community club by David, and, after being introduced to Millender, was taken in his car to the dance. It is also shown that during the intermission of the dance at the dance hall, at the request of David, Millender again voluntarily took them to his car, and started to the place where they expected to get refreshments. At no time does it appear that Miss Denham had anything to do with the movements of the car, or made the slightest suggestion as to the direction it should go. The fact is that Millender was a resident of West Virginia, had been a few weeks in Baton Rouge, and was directed by David in the operation of his car.

Huddy on Automobiles (8th Ed.), sec. 811, p. 966, gives the following definition of a joint venture:

"Parties cannot be said to be engaged in a joint enterprise unless there is community of interest in the objects or purposes of the undertaking; and an equal right to direct and govern the movement of each other with respect thereto. Each must have some voice and right to be heard in its control and management."

In brief of counsel for Taylor, in which it is contended that Millender was negligent, and that his negligence should be imputed to Miss Denham, we are referred to section 644 (6th Ed.) vol. 1, Berry on Automobiles.

The reference there made is to two persons, friends going on a pleasure trip, "the one not owning the car getting it ready for the trip," etc.

Here it appears that Miss Denham had been invited to the dance by David, and had made no arrangements whatsoever for a trip to the community club in the car of Millender, who was a stranger to her when he appeared at her home to take her there with David. When the intermission occurred at the dance hall, she was again invited by David to go down town for refreshments, and agreed to go in Millender's car. At that time she certainly had been unexpectedly invited, and had made no preparation for a trip as a joint venture with either David or Millender.

The other reference of counsel is to Blashfield, Cyclopedia of Automobile Law, vol. 1, p. 1005. The rule referred to by the author therein applies when persons engaged in a common enterprise, one is injured in prosecuting it by the negligence of a third person and recovery will be barred "if the injury was in a matter within the scope of the joint agreement."

For the purpose of giving a practical illustration of that rule, the author refers to a case where the parties were using a truck owned by one of the parties "for the purpose of getting their winter's supply of potatoes"; the negligence of the owner in such a case was in not having the tail light burning and was imputable to plaintiff. The fact that such parties had combined to get their supply of potatoes clearly indicates that they had engaged in a common enterprise, and that the negligence of one could be imputed to the other. The illustration above given is evidently suggestive of a partnership of interests or of a joint venture between the owner of the truck and the other parties.

Nothing of that character appears in the instant case, where Miss Denham merely

cordially acquiesced originally for a ride to the dance hall, and thereafter during the intermission for a short drive to the place where the refreshments were expected to be enjoyed.

Miss Denham was simply Millender's guest, and was not engaged in a joint venture or common enterprise, within the meaning of the definition of law writers on this subject, at the time of the accident in which she lost her life. Millender was therefore not absolved towards Miss Denham from responsibility for negligence or imprudence. Jacobs v. Jacobs, 141 La. 272, 74 So. 992, L. R. A. 1917F, 253.

Under an ordinance of the city of Baton Rouge, drivers of vehicles on North Boulevard street had the right-of-way. It is shown that Taylor was driving on North Boulevard westward towards the river, and ran into the rear end of the coupe Millender was driving northward, at a point a little north of the middle of the intersection of that street with St. Napoleon or St. Anthony street, as hereinabove stated.

Millender testifies that he saw the sedan Taylor was driving when he was 15 or 30 feet from the south line of North Boulevard. The sedan, when he first saw it, was, he says, in one instance, about 75 feet from the intersection and in other parts of his testimony he fixes the distance at 100 and as far as 150 feet. He admits he could have stopped his car and allowed the sedan to pass, of which there cannot be the least doubt, considering the distance at which he had seen it before attempting to cross. That he saw the sedan even when it was 150 feet from the eastern corner of the intersection there can be no doubt, as there was no obstruc-tion arising from the elevation of the neutral ground between the two boulevards, or from trees, buildings, or other obstacles, which could have affected his vision. Millender simply took a chance in attempting to cross North Boulevard, and either miscalculated the distance at which the sedan was from the corner of the intersection or the rapidity at which the sedan was traveling by which his coupe was struck.

Testifying at the coroner's inquest, Millender stated he was in St. Napoleon street when he saw the sedan, and was asked the following question:

"Q. You knew which street had the right-of-way?
"A. North Boulevard."

At the trial, his testimony was couched in words which seemed to throw a doubt as to whether he knew when he testified before the coroner that North Boulevard was a right-of-way street, or had been informed of that fact after the accident.

At the coroner's inquest he was testifying in reference to the collision, and then said he knew that North Boulevard was a right-of-way street. Obviously he was aware of that fact when the accident occurred. The proof is that Millender had been living in Baton Rouge for nine months in the fall of the year, and about six weeks when the case was tried, during the spring. He was driving a car which he needed in his business, and doubtless had familiarized himself with the traffic laws of the city of Baton Rouge, and knew that North Boulevard was a right-of-way street, as testified to by him at the coroner's inquest.

The rule applicable to the situation presented when the collision occurred is well

stated in Blashfield in his Cyclopedia of Automobile Law (1927) vol. 1, p. 499, sec. 25, as follows:

"The priority of right of one driver imposes a corresponding duty on the driver having the inferior right of way to exercise a degree of care commensurate with the superior right of the other to·observe the car of the other, its speed, position and operation, and to wait until it has passed before attempting to cross the intersection."

The foregoing rule was applied in the case of Buckner v. Powers, 12 La. App. 630, 125 So. 744. See, also, McCalmont v. Sterkx, 5 La. App. 730; General Exchange Ins. Corp. v. Morrow, 9 La. App. 487; De La Vergne v. Levy, 10 La. App. 768; Hubert v. Robichaux, 8 La. App. 789. We find it to be a sound and sensible doctrine which should govern in cases of this character.

If Millender, who had the inferior right-of-way, with proper care had observed the speed, position, and operation of the other car, he would have stopped or waited until it had passed the intersection before attempting to cross it. He did not observe the other car as he was required to do. did not exercise ordinary care, but proceeded across, negligently and carelessly, was clearly at fault, and was properly held liable in damages.

The defendant Taylor contends that Millender was under the influence of intoxicating liquor at the time to the knowledge of Miss Denham; that, even if she was his guest, as she rode with him knowing him to be under that condition, she was guilty of independent negligence contributing to her death which bars plaintiffs from the right of recovery.

Millender testifies that he was not under the influence of liquor, and so does David. Two or three witnesses testified that they smelled liquor on his breath, while others who were with him soon after the accident did not.

In a written statement made at the Lady of the Lake Sanitarium by David, who had been injured in the collision, to McClusky, adjuster of an insurance company that had given a policy on the Taylor car, David said that Millender had taken a drink or two before or at the dance, but was not drunk. David had suffered a fracture of the skull and· had been given opiates to alleviate his pains. He claims he was, when he made the statement, suffering, that his mind was not clear, and, as a witness at the trial, said that Millender had not been drinking that evening, and that, if he had made a contrary statement to McClusky, he did not remember it.

Let us say that Millender had taken a drink or two as appears in the statement of David to McClusky. There is no proof in the record to show the kind of liquor he drank. It might have been light wine or other mild beverage, and, for aught we know, small drinks that could not possibly have intoxicated Millender, a heavy-set strong man, 27 years of age.

Let us go further and take it as proved that Millender had taken a drink or two of whisky or some other strong liquor of that nature, such a drink would not, in our opinion, have rendered him "incapable of safely or prudently driving a car," so that Miss Denham could not have failed to notice his condition, and as a matter of law would have been negligent in voluntarily continuing to occupy his car, and ride with him, so as to bring this case under the rule recognized by Blashfield, Cyclopedia of Automobile Law, vol. 4 (1930

Supplement, p. 187) relied upon by counsel for Taylor.

There is no evidence in the record to indicate that Millender was driving the car in a reckless manner which could have suggested to Miss Denham that he was an incompetent driver or that he was under the influence of liquor. On the contrary, it is shown that, when he came to the intersection and drove across North Boulevard, and before, he was going 15 miles an hour, which was within the speed limit as fixed by ordinance of the city of Baton Rouge.

Taylor is urging this defense of the independent negligence of Miss Denham resulting from the alleged intoxication of Millender because he is sued with Millender in solido as a joint wrongdoer or tortfeasor.

The proof shows that by ordinance of the city of Baton Rouge the speed limit on the streets where the accident occurred was 15 miles an hour.

Taylor testifies, so does Miss Few, who was an occupant of his car at the time, that he was traveling when he was coming to the intersection and when he applied his brakes to avoid the collision at a speed not over 20 miles an hour. Taylor was therefore traveling, according to his own testimony and that of his lady companion, at a rate of speed five miles in excess of the limit fixed by the city ordinance.

Police officers of the city, it is shown, had given out a general permit to auto drivers to travel over the boulevards at a rate of 20 miles an hour which it seems, in their opinion, was to the benefit of customary traffic over those driveways. It is proper to say here, before going further in the discussion of this case, that this extension of the speed limit by the police officers could have no legal effect on the speed limit of 15 miles fixed by the city. It must therefore be held that Taylor was, according to his own admission, traveling at a speed in violation of the traffic regulations of the city.

Counsel for Taylor contend that, although the driver of an auto is exceeding the speed limit fixed by ordinance or statute, he cannot be held liable for negligence or contributory negligence unless the excessive speed is the proximate cause of the injury. He cites in support of that contention Rule v. Claar Transfer & Storage Co., 102 Neb. 4, 165 N. W. 883; Berry on Automobiles, sec. 230, p. 202, vol. 1.

He admits that in Buckner v. Powers, 12 La. App. 630, 125 So. 744, above cited, it was held that, if the driver is exceeding the speed limit, he is guilty of "negligence as a matter of law," but contends, however, that such a statement by the court was an obiter dictum, and that a correct analysis of that opinion shows that it held to the doctrine which he contends is recognized in the cases upon which he relies as hereinabove cited. He also contends that the obiter dictum found in the Buckner case is opposed to the rule of law he invokes, and which he claims was recognized in the case of Lopes v. Sahuque, 114 La. 1004, 38 So. 810.

The doctrine urged by counsel was approved in general terms in that case but is more directly recognized in Collier v. Frank Varino & Co., 153 La. 636, 96 So. 500; Smith v. Interurban Transp. Co., 5 La. App. 704; Hudson v. Jackson Brewing Co., 4 La. App. 549, and Berry on Automobile Law, vol. 1, sec. 230, p. 202, al-

though there are expressions in other cases of the Courts of Appeal which lead to a contrary conclusion. See Tolliver v. Checker Cab Co., 3 La. App. 278; Firemen's Ins. Co. v. Brook Tarpaulin Co., 3 La. App. 502; Bianchi v. Mussachi, 1 La. App. 291.

In disposing of this case we will accept counsel's contention that, though the driver is going at a rate of speed exceeding that which is permitted by the ordinance, ne cannot be held liable unless the excessive speed was the proximate cause of the injury. The case will be considered under that rule while bearing in mind the rule which says that a driver on a right-of-way street is not absolved from the duty of exercising proper care and consideration for others. Standard Accident Company v. Mullor, N. O. Court of Appeal, case No. 8577. (See Louisiana & Southern Digest.)

The proof shows that North Boulevard, a right-of-way street on which Taylor was traveling, is lit at night by what is commonly known as a "white way lighting system." These lights, the evidence shows, were on when the accident happened. It is shown that there is a depression in North Boulevard at about 172 feet from its intersection with St. Napoleon street. By actual tests made it was clearly established that Taylor could have seen the lights of the Millender car at 100 or even 150 feet from the intersection as it was coming along northward on St. Napoleon street towards the intersection. Taylor seemed to intimate by his evidence that his vision was obstructed by a rise of the neutral ground of which we have spoken. The proof shows that its elevation above North Boulevard could not have such effect, and that, if Taylor had merely glanced to his left at any distance from the intersection after he had passed the low spot

172 feet away, he would unquestionably have seen the Millender car. Under the law he must be held to have seen it. Kelly v. Schmidt & Ziegler, 142 La. 91, 76 So. 250.

If he had been going at 15 miles an hour, his car being 75 to 100 feet from the intersection, as testified to by Millender who was at that time not over 30 feet from the intersection, Millender would have easily negotiated North Boulevard street, only 29 feet wide, and would have escaped injury. The result would have been the same if Taylor had been moving at 20 miles an hour, the speed he claims at which he was traveling. The proof shows by actual tests made on pavement that the Taylor car, if it was traveling at 20 miles an hour, even with one good brake, could have been stopped in 20 feet from the application of the brakes. Taylor says he was 10 or 12 feet from the intersection when he saw the coupe, and that he immediately applied his brakes, although we may state here that there were no marks seen on the pavement to show that they had been applied. Taylor says his brakes were in good condition. If he had applied them at 10 or 12 feet from the coupe, even if he had had an open way, his sedan would have been stopped before it reached the west line of St. Anthony street or St. Napoleon, 29 feet wide, as was demonstrated by the tests to which we have referred. Instead of having a clear way ahead of him when he says he applied his brakes, Taylor's car ran into the rear end of the coupe, knocked it westward 36 feet, turned it completely around, facing south, threw David and Miss Denham out of their car, and was found well beyond the western line of St. Napoleon or St. Anthony streets, and the crash of the impact was heard at one

block away from the scene by Zernot, who was driving in the direction of the wreck when it occurred. The coupe was badly damaged, and the sedan was considerably injured, requiring repairs of $67 on the coupe, and $68.39 on the sedan.

These physical facts are of such a character that we are forced to conclude that Taylor was traveling at not less than 30 miles an hour when he applied his brakes, if he did as claimed by him. We are also referred to the cases Jacobs v. Jacobs, 141 La. 272, 74 So. 992, L. R. A. 1917F, 253, and Hutchens v. Morgan, 12 La. App. page 545, 125 So. 309, in which damages claimed by a guest against the driver of an auto were denied. In the Jacobs case, though the court said that the guest or licensee was not entitled to the consideration due by a carrier to a passenger for hire, it held, however, that the guest was entitled to the benefit of the provisions of article 2315, Civ. Code, that any act of negligence or imprudence that causes injury or loss to another obliges him who was at fault to pay for the loss or injury. The court found in that case that the defendant was not guilty of negligence and was not at fault.

Here the contrary appears, as both defendants were at fault for the reasons above stated.

In the case of Hutchens v. Morgan, the court inclined to the conclusion that plaintiff was not a guest, but, conceding that he bore that relationship to the driver of the car, the court said that plaintiff was a companion and guide of the driver, as he was more familiar with the route, that he knew he was driving at an excessive speed, which was the cause of the accident, and that plaintiff made no protest, intimating at the same time that, if he had, Gibbs, the driver, would have heeded the advice.

There are no facts of that character in this case, as appears from the reasons given by us in the beginning of this opinion, which show that Miss Denham was purely a guest, was in no sense a guide to Millender, the driver, did not in any way direct the movements of the car, and had no control whatsoever over it, and was not engaged in a joint venture or common enterprise. The case of Hutchens has no application to the facts of this case.

Millender and Taylor were therefore both at fault which was the proximate cause of the injury. It was their concurrent negligence which caused the death of Miss Denham, an innocent third party.

The defendants were tort-feasors or wrong-doers, and are responsible in solido; plaintiffs having the right to recover from either or both. Shield v. Johnson & Son Co., 132 La. 773, 61 So. 787, 47 L. R. A. (N. S.) 1080; Whipple v. Lirette, 11 La. App. 485, 124 So. 160, concurring opinion.

The lower court allowed $5,000 damages against Millender only. The judgment is affirmed in that respect, as we find this allowance fair, and should not be increased as asked by plaintiffs. It must be reversed insofar as it rejects the demand against Taylor, and must be amended by decreeing the judgment in solido against the two defendants.

It is therefore ordered, adjudged, and decreed that the judgment rejecting the demand against Taylor is hereby reversed; it is further decreed that plaintiffs have judgment against David H. Taylor, Jr., and Joe D. Millender for $5,000 in solido, with legal interest from judicial demand, and, as thus reversed and amended, the judgment be affirmed.