### BURNETT v. COCKRILL et al.
### No. 1060.

Court of Appeal of Louisiana. First Circuit.

Jan. 24, 1933.

Breazeale & Sachse and Johnson & Kantrow, all of Baton Rouge, and Wm. H. Talbot, of New Orleans, for appellants.

Daspit & Huckabay, of Baton Rouge, for appellee.

LE BLANC, J.

On October 30, 1931, Jean Burnett, minor daughter of James L. Burnett, was injured in an intersectional automobile collision at North boulevard and Royal street in the city of Baton Rouge. A Chevrolet coach belonging to Francis L. Johnston and being driven by him, and in which Miss Burnett was riding as a guest, collided with a Ford coach owned and being driven by B. M. Cockrill.

Miss Burnett's father instituted this suit in his own behalf as well as for the use and benefit of his minor daughter, seeking to recover the following damages:

For himself,

| | |
|---|---|
| Doctors' Bill | $75.00 |
| Hospital Bill | 40.00 |
| Damage to his daughter's clothing | 25.00 |
| | $140.00 |

For the use and benefit of his daughter,

| | |
|---|---|
| Permanent injury to speech and voice | $4,000.00 |
| Disfigurement of neck and head | 2,000.00 |
| Physical and mental pain | 5,000.00 |
| Loss of earning power as radio singer and theatrical performer | 3,000.00 |
| Humiliation and embarrassment as a result of impediment in voice and speech | 1,000.00 |
| | $15,000.00 |
| | $15,140.00 |

The claim is being prosecuted against Johnston, owner and driver of the Chevrolet car in which Miss Burnett was a guest, the Hartford Accident & Indemnity Company, in which Johnston carried a casualty policy of insurance in the sum of $10,000, and the Standard Plumbing, Heating & Supply Company, Inc., of Baton Rouge, Cockrill's alleged employer and in the scope of whose employment, it is also alleged, he was at the time of the accident. Cockrill himself was not cited and he refused to testify under deposition.

The lower court rendered judgment in favor of the plaintiff in the sum of $115 for himself and the sum of $2,500 for the use and benefit of his minor daughter, against all defendants, in solido. Appeals were taken by all defendants, and plaintiff has filed an answer thereto asking for an increase in the judgment to the sum of $10,115.

In paragraph 10 of his petition, plaintiff alleges that the Ford coach involved in the accident was owned and operated at the time by "B. M. Cockrill, defendant herein, the agent, servant and employee of the Standard Heating & Supply Co. Inc., defendant herein, and at the time of the accident, the said Cockrill was acting in the scope of his employment with the said Standard Plumbing, Heating & Supply Co., Inc., and was engaged in the furtherance, carrying on and operation of the business of his said employer." Again, in paragraph 11 of the petition, Cockrill is referred to as the agent, servant, and employee of the Standard Plumbing, Heating &

Supply Company, Inc., engaged at the time of the accident in the scope of his employment and in the transaction of his employer's business. In a supplemental petition, the allegations of paragraph 10 are elaborated on at length. The effect of the answer of the Standard Plumbing, Heating & Supply Company, Inc., to these two paragraphs and to the allegations of the supplemental petition, is a denial of Cockrill's negligence as therein also alleged, and also a special denial that he was its agent and employee. The lower court held that as the denials had not been made in the alternative, defendant Standard Plumbing, Heating & Supply Company, Inc., had waived the denial of his agency, and that therefore the allegations that he was acting within the scope of his employment had to be taken as admitted. Judgment against the Standard Plumbing, Heating & Supply Company, Inc., was accordingly rendered without proof of the facts alleged as to Cockrill's employment and that he was at the time of the accident engaged in the course thereof.

To support the ruling of the trial court on this point, plaintiff relies principally on the case of Wardlaw v. Harvey & Jones (La. App.) 138 So. 892, wherein the court in effect holds that a denial of negligence and a denial of the agency are inconsistent and should have been pleaded in the alternative. We are also referred to the case of Adams v. Bell Motors, Inc., 9 La. App. 441, 121 So. 345. Both of these cases were decided by the Court of Appeal, Second Circuit.

We do not consider the Adams Case as authority here because there was a reconventional demand involved in the answer in that case which appeared not to have been properly pleaded, but which, because of the nature of the special defense set up in the answer itself, the court held in effect constituted an admission by defendant that the automobile involved in the accident was in its control and possession, and that the driver thereof was acting within the scope of his authority.

In the Wardlaw Case also, after denying agency, the defendants, without pleading in the alternative, alleged that the accident was due solely to the negligence of the plaintiffs, and that if it should be found that it was not, that it was then the result of their contributory negligence. In addition thereto, the special plea was made that the plaintiffs had the last clear chance to avoid the accident. If, by its ruling, the court meant that because these were special or affirmative defenses, they should have been pleaded in the alternative, and that is the way we so construe it, we are in accord therewith and do not find that it has application here where the defendant was merely answering categorically the numbered articles of plaintiff's petition in the order in which they came. In that case, a writ of review was applied for to the

Supreme Court which was denied. The remarks of the court in refusing the writ appear to us a bit significant:

"If the Court of Appeal was in error in construing the answer as an admission of agency, 'says the Court' the error was harmless since it found that the agency was established by evidence beyond the admission.

"On the facts found by the Court the judgment is correct."

More recently again, the Court of Appeal, Second Circuit, had the same question before it for consideration in the case of James v. J. S. Williams & Son, Inc. (La. App.) 143 So. 84, 85, reported in Advance Sheet of September 8, 1932. In referring to the pleadings, the court states that in one article of the petition, plaintiffs alleged the date of the accident and that Neita James, one of the plaintiffs, was struck down by an automobile owned by defendant and being operated by one of its employees acting within the scope of his employment. This allegation was denied in defendant's answer for want of information. In another article of the petition, plaintiffs alleged that the recklessness of the defendant, its driver and employee, was the direct proximate cause of the accident, which allegation the defendant specially denied. Still in another article of their petition, the plaintiffs alleged that defendant's employee, operator of the car, was on a mission of his employer, and in the course of his employer's business at the time for the accident, and this article defendant again specially denied in its answer. Here, it seems to us that we have a set of pleadings which more nearly resembles that in the case before us than any we can think of, except that the first denial referred to is made for want of information. We are unable to appreciate what difference that would make, however, for the purpose of considering the issue presented. The following statement which we quote from the decision we consider very pertinent:

"It was necessary for plaintiffs to allege, in order to state a cause of action, that defendant's car struck plaintiff, and that the driver of the car was acting at the time within the scope of his employment. It was likewise necessary for defendant to answer these specific allegations. It said in its answer that it had no knowledge or information that plaintiff was struck by its car, and it could not be held liable if its car did strike plaintiff, for the reason that the car was not being operated at the time by any of its employees or agents authorized at that time to operate any of its cars. The defenses are not inconsistent, and the testimony offered on the last defense was correctly heard."

The court then adopted the following comment by the trial court on the Wardlaw Case, as its own:

"Counsel for plaintiff contends that under the authority of Wardlaw v. Harvey & Jones (La. App.) 138 So. 892, 895, the defendant in the present case waived the question of authority of its employee, and admitted the same when it set up defenses inconsistent with a denial of authority.

"We think the case is authority for holding that, when a defendant denies the authority of the agent and then sets up an affirmative defense, the latter serves as a waiver of the former."

That is our appreciation of the rules of pleading, under which of course we find that there being no inconsistent defenses set up in the answer of Standard Plumbing, Heating & Supply Company, Inc., and no affirmative defense requiring an alternative plea, there were no waivers or admissions which entitled the plaintiffs to a judgment against it without proof.

Defendants Johnston and Hartford Accident & Indemnity Company attempted to show that Cockrill was responsible for the accident and not Johnston.

Cockrill was driving northward on Royal street into the southern driveway of North boulevard. Johnston was coming from the east on the north side or driveway of North boulevard, going toward the Mississippi river. Cockrill was going about twenty-five miles per hour and did not slow down as he reached the intersection. Johnston was on the right of way street and had entered the intersection first. For a double reason, therefore, Cockrill should have respected his superior rights and should have stopped or slackened his speed to let Johnston get across. Instead of doing so, however, Cockrill continued on across the intersection into the north driveway of North boulevard at the same rate of speed he had been going and struck the left rear fender of Johnston's car. Cockrill was therefore clearly at fault.

Of course, no judgment can be rendered against him as he was never cited, nor can judgment be rendered against Standard Plumbing, Heating & Supply Company, Inc., his alleged employer, for lack of proof that he was employed by it and was acting at the time within the scope of his employment. We must refer to his actions, however, for the reason that they were so linked with those of Johnston they must of necessity be considered together in determining the liability of the latter as a tort-feasor.

The ordinance regulating the speed of automobiles in the city of Baton Rouge fixes the limit on those streets where the accident occurred at fifteen miles per hour. Johnston was admittedly exceeding this limit and his violation of the ordinance constitutes one of the charges of negligence against him. The question of negligence arising from the violation of a city speed ordinance was carefully considered by this court in the case of Den-

ham v. Taylor, 15 La. App. 545, 131 So. 614, where it was held that though the driver of an automobile is going at a greater rate of speed than allowed under the ordinance, he will not be held liable unless the excessive speed was the proximate cause of the accident and resulting injury. We believe that the ruling was supported by the weight of authority as therein pointed out and we still adhere to it. Under this ruling we have to determine whether or not Johnston's speed in excess of the limit fixed by the ordinance was the proximate cause of the accident.

Johnston called at Miss Burnett's home late during the evening of the accident. They left her home, which was on the north side of the Senior High School on North boulevard, to go to the Griffon's drug store at the corner of Government and Dufrocq streets. They found the drug store closed, so proceeded on Government street with the idea of going to Pace's drug store. Passing there, they found that it also was closed, so they continued on Government street, toward the river. While on that street, Johnston himself says that he was going around forty miles an hour. At the solicitation of Miss Burnett, he slackened his speed to about thirty miles as he entered into North boulevard and kept it at that until he reached the intersection of Royal street where the collision took place. Miss Burnett testifies that she looked at the speedometer and Johnston does not deny that he was running that fast.

It is shown that North boulevard is the main automobile artery for automobile traffic in the city of Baton Rouge and its most prominent automobile thoroughfare outside of the business district. Although it is well illuminated and the accident happened after 11 o'clock at night when no doubt automobile traffic must have slackened up considerably as compared with the daytime, it nevertheless seems to us that a speed of thirty miles per hour upon reaching an intersection when, as in this case, the driver was looking at another car entering the same intersection, was excessive. Had Johnston being going even twenty miles an hour, Cockrill would have passed ahead of him before he entered it and no collision would have occurred. At that speed he could no doubt have stopped his car in time had he and Cockrill reached the intersection together. He says that at the speed he was going he could have stopped but that he would have stopped in the intersection. Evidently he did not mean at the edge or near the intersection, because had he meant that, Cockrill would have had ample room to pass ahead of him as Royal street, where it intersects North boulevard, is twenty-nine feet wide. Had he occupied even fifteen feet of the eastern side of the intersection, Cockrill would still have had fourteen feet in which to pass on the west side.

The evident reason why Johnston did not apply his brakes was because at the speed he was going, he would have come to a stop further in the intersection and a collision would then have been inevitable. To avoid that result, apparently, was his reason for increasing his speed which he testifies he did, so that he could pass ahead of the Cockrill car. In making this choice to speed ahead of the other car, he made a mistake, as he was struck by it.

■■ It may be urged that a sudden emergency presented itself before Johnston and that if the choice he made was not the best, he cannot be held for an error of judgment under the circumstances. There is a well-recognized rule that relieves a driver of an automobile from liability for negligence under such conditions, but the rule only favors him when the emergency created was not one of his own making. In this case the sudden emergency was brought about, partly, if not altogether, by the excessive speed at which Johnston was traveling. Undoubtedly he saw the other car approaching northward towards the intersection on Royal street and could have had his car under absolute control before he reached there. Had he been going at a rate of speed within the limit prescribed by the city ordinance, we feel satisfied that no collision would have occurred. We find no error in the judgment of the lower court holding him at fault with Cockrill for the accident and imposing liability on him and his indemnitor, Hartford Accident & Indemnity Company, made defendant herein.

The next question which presents itself is whether Miss Jean Burnett was a guest of Johnston, and as such entitled to recover the damages claimed on her behalf by her father, James L. Burnett.

Whilst Johnston was at her home the night of the accident, he offered to take her to a drug store to procure some medicine which she needed. There was no question of joint venture or enterprise, and in fact we do not find that counsel for defendants contend that she was not a guest within the accepted meaning of that word in cases of this kind. The disputed issue is whether she protested in time at Johnston's fast driving or otherwise acquiesced in his conduct.

While driving on Government street, as already indicated, Johnston says that he was going forty or forty-five miles an hour, and upon being asked by Miss Burnett to slacken his speed, he slowed down to thirty miles when he turned into North boulevard. Miss Burnett testifies over and over again that she asked Johnston to slow down after they were on North boulevard, but that he did not and continued to run at the same rate until the time he reached the intersection of Royal street, and then, realizing that a collision would occur, he speeded up a bit more so as to pass ahead of the other car. Johnston, whilst not admitting that Miss Burnett requested that he slacken his speed after they

entered North boulevard, does not, however, deny that she did. He says that she might have, and that he did not hear her.

In the case of Lorance v. Smith, 173 La. 883, 902, 138 So. 871, 876, the Supreme Court says that "a guest or a gratuitous passenger in a motor vehicle cannot recover for injuries due to the negligence of his host if he is aware of and acquiesces in the negligence." The repeated requests of Miss Burnett to Johnston to slow down was in fact a protest against his fast driving as she appreciated the conditions existing at the time. The lower court found in her favor on this important question of fact and we are not disposed to hold that it has fallen into a manifest error.

■ It appears also that Johnston had been a frequent visitor at the home of Miss Burnett and that she had been his guest in his automobile on a good many occasions before the day of this accident. She says that she considered him a bad driver. This, to our minds, constitutes the weakest point in her case, as, it may be said, that entertaining such opinion she should not have accepted his invitations and should not have gone with him the evening of the accident. We, however, do not think that a willingness to ride with him should be extended into an assent or acquiescence on her part in his fast driving. The fact of the matter is that by her repeated protests she manifested her positive objection to the speed at which he was driving the very night of the accident and up to the moment of the collision. It is true that in the case of Lorance v. Smith, supra, the court refers to Miss Lorance, a young lady fifteen years old, as having reached the age of discretion and that Miss Burnett was in her sixteenth year at the time of this accident, and of course also of the age of discretion. Still, we do not believe that she should be charged with having assented to Johnston's fast driving on this occasion merely because she considered him a bad driver, when, on the contrary as already stated, she made many protests against it.

We have reached the conclusion that the judgment correctly holds her father entitled to recover damages in her behalf.

■ Miss Burnett undoubtedly received an extremely severe injury, which very nearly resulted in a fatality, as she came near bleeding to death and was saved only by a blood transfusion. Dr. T. Spec Jones who attended to her goes into some detail describing her injury which consisted of a severe gash in the neck. The inaccessibility of the deep-seated blood vessel, which he says was in a very complicated anatomical area, made it very difficult to locate the artery that was bleeding. He finally succeeded in reaching it and stopped the hemorrhage by suturing the blood vessel. The operation which he performed appears to us to have been most delicate and involved quite a chance with the young lady's life. As her injury involved the most sensitive nerve in the body, the one that supplies the face, he says that it was very painful for quite some days. She is therefore entitled to a substantial award for her suffering as well as for the shock she was bound to have felt. We would think that the amount of $2,500 would about compensate her for this item of her damages.

■ Another item for which she is entitled to recover is for disfigurement of her neck. She has what appears to be a very large scar right in the front of her neck, if we are to judge by her photograph which was introduced in evidence. It is, unfortunately for her, at a place where it is clearly visible and, according to the doctor, is permanent. Because of her youth, her appearance means more to her than a person of advanced age. We will fix her damages for this item at $1,000.

The other items claimed for loss of earning power as a radio singer, for injury to her voice, and humiliation as a result of impediment in speech, have not, in our opinion, been supported by satisfactory proof and nothing will be allowed.

The father, we believe, is entitled to recover the damages allowed by the trial judge.

The judgment of the lower court will therefore have to be reversed in part and amended in part, and,

It is now ordered that the judgment appealed from be, and the same is hereby, annulled, set aside, and reversed in so far as it condemned the defendant Standard Plumbing, Heating & Supply Company, Inc., and that as against the other defendants, Francis L. Johnston and Hartford Accident & Indemnity Company, it be amended by increasing the amount awarded from the sum of $2,500 to the sum of $3,615, and as thus amended, that it be affirmed.