This suit results from an intersectional collision between an automobile owned by the plaintiff, Walter Epps, and driven by his minor son, Earl Epps, and a motor truck belonging to the Standard Supply Hardware Company, driven by its employee, Roy L. Schilling, in the course of his employment. The accident occurred on July 3, 1940, at about 4:15 p.m., at the corner of Josephine and Constance Streets, in the City of New Orleans. The plaintiff, Walter Epps, on his own behalf, claims from the Standard Supply Hardware Company and its insurer, the New Amsterdam Casualty Company, in solido, the sum of $1,117.26 and on behalf of his minor son the sum of $310 as damages, growing out of the accident which, it is alleged, was entirely due to the fault of the driver of the truck. *West Page 791 
The defendants denied that the driver of the truck was responsible for the accident, which they aver was due solely to the negligence of plaintiff's son, and, in the alternative, pleaded contributory negligence on the part of Earl Epps, the minor, which, it is claimed, should be imputed to the father, Walter Epps.
There was judgment below dismissing plaintiff's suit and he has appealed.
There were four eyewitnesses to the accident — Roy L. Schilling, the driver of the truck, Earl Epps, the driver of the automobile, Walter Epps, his father, and Donald Desvignes, both passengers in the automobile.
The Epps car approached the intersection of Josephine Street traveling in the direction of Lake Pontchartrain. The truck was proceeding along Constance Street from the right of the Epps car and, in the direction of Carrollton Avenue, or what is colloquially known as "uptown". Constance and Josephine Streets are one-way streets.
Earl Epps testified that as he drove up Josephine Street and when nearing its intersection with Constance Street, he blew his horn and brought his car practically to a standstill; that he looked down Constance Street in the direction of traffic and saw nothing, whereupon he proceeded slowly across the intersection; that as he reached a point about the middle thereof, his car was struck on its right side by the front end of the truck, causing it to move sidewise and strike a telephone post which was on the uptown lake corner of the intersection or, in other words, completely across Constance Street, that at the time he looked in the direction from which the truck approached, his automobile was at the curb line of Constance Street, but that he could not see more than fifty feet because of the presence of a church on the corner which, he claimed, made it a "blind corner"; that while the front of his car was abreast of the Constance Street curb when he slowed down, it was some distance away from the Josephine Street curb and near the middle of the street; and that he did not see the truck, which was moving very fast, until a moment before the impact.
Epps is corroborated by the two passengers in his car — his father, Walter Epps, and Donald Desvignes.
Roy Schilling, the truck driver, testified that as he reached the intersection he was traveling at about fifteen miles per hour; that when he reached the corner he looked out Josephine Street and not seeing any cars approaching, started across the intersection when the Epps car, running very fast, bore down upon him, whereupon he jammed on his brakes and because of the wet pavement (it had been raining) he began to skid and finally collided with the automobile. He was asked a number of times about when he first saw the automobile, but, for some reason, either because of wilful evasion or some other cause, he failed to answer.
Upon the testimony of the drivers of the colliding vehicles themselves, we have no hesitancy in saying that both parties were at fault. Epps' statement that he could not see more than fifty feet down Constance Street when his automobile was abreast of the Constance Street curb is most remarkable in view of the fact that there are no buildings to obstruct his view at that point. The church, which he claimed obstructed his view, was, according to the evidence, about fifty feet from the corner, but if it had been on the property line it could not have interfered with his vision, because he was at the curb line when he looked. At that point he is positive that he did not see the truck. If so, he should have seen it, for it was, at that time, necessarily in plain view.
In Jackson v. Cook, 189 La. 860, 181 So. 195, 197, it is said:
"* * * that the duty of those in charge of motor cars and engines to look ahead and observe never ceases; that what they can see they must see and in legal contemplation they do see; that their failure to see what they could have seen by the exercise of due diligence does not absolve them from liability."
See, also, Denham v. Taylor, 15 La.App. 545, 131 So. 614; O'Day v. Kapanica, 18 La.App. 634, 138 So. 472; Delaune v. Breaux,174 La. 43, 139 So. 753; Goodwin v. Theriot, La.App., 165 So. 342; Broussard v. Hotard, 4 So.2d 563, No. 17,166 of the docket of this court, decided November 17, 1941.
Moreover, if he was all but motionless when he looked and did not see the truck, he should have been able to stop his car instantly and before making contact with the truck when he did see it, though it was but a moment before the impact. We might add that if the corner *West Page 792 
had, in fact, been a blind corner, as he says it was, there was all the more reason for the exercise of care in approaching the intersection, because his view would have been obstructed until he had passed the property line.
Schilling, the driver of the truck, like young Epps, did not see the automobile when he looked in the direction of traffic on Josephine Street. The learned judge of the trial court took the trouble to visit the scene of the accident and has written strong reasons for his judgment. He did not discuss the negligence of Schilling, however, except to say that "even if he saw the Epps car on Josephine Street, he could not assume that this car was going to cross in front of him. He naturally assumed that the car would wait until traffic was clear before passing across Constance Street." Schilling had the right of way under the traffic ordinance because he was on Epps' right, provided, he reached the intersection at about the same time.
Article V, Paragraph 15 (a), of the Traffic Ordinance, No. 13,702, Commission Council Series, reads in part as follows:
"* * * when two vehicles enter an intersection at the same time, the driver of the vehicle on the left shall yield to the driver on the right."
As the learned judge, a quo, properly observed, Schilling, having the right of way, was justified in relying upon the presumption that the Epps car would obey the traffic ordinance, but Schilling testified that he did not see the Epps car and, therefore, was in no position to know where it was and, consequently, could not assume that it would respect a right of way which did not exist, unless the Epps car entered the intersection at about the same time. The fact that the Epps car was struck broadside by the front of the truck is an indication that it (the Epps car) had entered the intersection before the truck. Schilling looked and did not see which is the same thing as not looking at all. Jackson v. Cook, 189 La. 860, 181 So. 195; Denham v. Taylor, 15 La.App. 545, 131 So. 614; O'Day v. Kapanica, 18 La.App. 634, 138 So. 472; Broussard v. Hotard, 4 So.2d 563, No. 17,166 of the docket of this court, decided November 17, 1941. If Schilling had the right of way he was not relieved of the duty of looking in the direction of traffic. Holderith et ux. v. Zilbermann, La.App., 151 So. 670.
Counsel for plaintiff criticizes a statement of our brother below to the effect that in an accident such as described by the pleadings that "there must be some negligence on the part of both". In our opinion little fault can be found with this statement, for while we have often recognized the right of one party to an intersectional collision to recover, we said in Folse v. Flynn, La.App., 200 So. 160, 161, that "it is undoubtedly true, as we have heretofore observed, that in most intersectional collisions both parties are at fault. Guernsey et al. v. Toye Bros. Yellow Cab, Co., Inc., La.App., 172 So. 459". This case is no exception to the rule and we find that both drivers were at fault.
It is said that the negligence of young Epps cannot be imputed to his father, who was riding with him in the car at the time of the accident, and that since the father has claimed $1117.26 on his own behalf, he should recover regardless of the negligence of his son because we have found the driver of the truck guilty of negligence. In other words, the father is in the position of a guest in the automobile.
Article 2318 of the Revised Civil Code reads in part as follows:
"The father, or after his decease, the mother, are responsible for the damage occasioned by their minor or unemancipated children, residing with them, * * *".
There is some indication in the record that young Epps resided with his father and nothing to the contrary. We will, therefore, presume that young Epps lived a normal life under the roof of his father.
In Di Leo v. Du Montier, La.App., 195 So. 74, 76, the plaintiff sued for damages sustained by his automobile as the result of a collision due, in part, to the negligence of his son who was driving it at the time of the accident. Plaintiff was not permitted to recover notwithstanding the negligence of the driver of the other automobile. In our opinion in that case we said:
"Since it is shown that young Di Leo was a minor and was residing with his father, it follows that his said father is responsible for any loss resulting from his negligent acts. Revised Civil Code, Art. 2318. Therefore, being responsible for the results of these negligent acts of his son, he is prevented from recovering for the damage sustained by his car." *West Page 793 
In Douga v. Ancona Baking Co., La.App., 193 So. 271, 274, we said:
"It is strange indeed that the jury should have found in favor of the child's father for the reason that, since the accident was the result of the contributory negligence of the child herself, it is obvious that the father could not recover for the expense to which he was put. It is well settled that the contributory negligence of an injured child is a defense to an action by the parent to recover money expended for medical attendance upon the child. Callies v. Reliance Laundry Company, 188 Wis. 376, 206 N.W. 198, 42 A.L.R. 712; Farrell v. Greene, 110 Vt. 92,2 A.2d 196; 46 C.J., 1303; 20 R.C.L. 617, Note, 42 A.L.R. 717."
It, therefore, follows that the plaintiff in this case, being responsible for the torts of his minor son, cannot recover.
For the reasons assigned the judgment appealed from is affirmed.
Judgment affirmed.