This is a suit for damages for personal injuries and other damages incidental thereto, arising out of an accident which took place on September 14, 1937, on the Airline Highway about four or five miles north of Gonzales, in the Parish of Ascension.
The plaintiff, Julius L. McCook, sustained a fracture of his left leg and also contusions to his back and knees for which he is asking to recover the sum of $22,500. In addition he is claiming loss of salary for three months amounting to $1,350 and medical and other expenses in the sum of $656.35. The total amount of his demand therefore is $24,506.35.
In his petition he alleges that late on the afternoon of the accident he was traveling as a passenger in a Dodge Sedan which was being driven by one Porter Profitt and which was owned and operated by the McCook *Page 513 
Brothers Funeral Home. He avers that he had nothing to do with the direction, control or management of the car either prior to or at the time of the collision. He alleges that the auto was traveling north on the highway which is generally known to be one that is heavily traveled at that point where the accident occurred; that the car was in perfect running condition and the driver was operating it in a careful and prudent manner.
He then avers that on reaching a point about four and one-half miles north of Gonzales, there was a motor freight truck, commonly known as a motor trailer tractor with a semi-trailer attachment with a square wood and steel body, parked on the highway in violation of the laws of this State. That the said truck belonged to Rebecca-Fabacher, Inc., and was being driven at the time and under the control and management of one Joseph Johnson, its agent, servant and employee, being engaged at the moment in the scope of his employment and in the pursuance of his employer's business.
He avers that during the late afternoon mentioned at some time which he does not know exactly, but it was a considerable length of time before the accident which later happened, the said Joseph Johnson parked the truck with the trailer on the highway approximately in the center thereof, headed north or towards the City of Baton Rouge; that he failed to display flags or flares to the front and rear of the said truck in accordance with the provisions of the State law (Act No. 164 of 1936) and that he also failed to provide a clearance of fifteen feet to the left side of the said truck as further required to do under the law (Act No. 21 of 1932). He avers that prior to and at the time of the collision it had been and was raining and that the vision of anyone traveling on the highway was obstructed by the rain and by the further fact that it was almost dusk. He then sets out that the semi-trailer of the truck was painted a dark color so that it blended with the rain and the approaching dusk, making it practically impossible for anyone approaching it from the south to see it until he was on it or within a very short distance from it, and further that parked as it was, it made it impossible for any such person so approaching it to see traffic of any kind on the highway in front or to the north of it.
He then avers that when the driver of the Dodge Sedan which he was in came within sight of the truck and semi-trailer, he realized that it was parked in the center of the road, and in order to avoid running squarely into it he immediately pulled sharply to his left to pass ahead of it but that then he perceived for the first time, another car coming towards him from the north, which had been hidden from his view by reason of the parked truck; that he thus became faced with a sudden emergency caused by the negligence of the driver of the truck in parking it on the highway and that in order to avoid a head-on collision with the car approaching from the north he pulled back sharply to his right and behind the trailer and was thus forced to run into its rear end.
Plaintiff then sets out in detail the injuries which he sustained and all the medical and other expenses incurred thereby, all of which he claims that he is entitled to recover from the defendant Rebecca-Fabacher, Inc., and its public liability insurance carrier, The National Casualty Company because of the gross negligence and carelessness of the driver of the said truck as set out in his petition.
For answer to the plaintiff's petition the defendants jointly deny all of the allegations relating to the manner in which the accident is therein set out and especially do they deny the negligence charged against the driver of the truck, Joseph Johnson, who they allege was operating the same in a careful and prudent manner, at a reasonable speed, on the right hand side of the paved highway, when for some unaccountable reason it slowed down unexpectedly and then stopped because, as discovered afterwards, its carburetor had become temporarily choked. They aver on the contrary that the collision was caused and resulted solely by the negligence of the driver of the Dodge Sedan who was driving at an excessive speed and was not keeping a proper look-out. Particularly do they charge that he did not have the car under such control as to be able to stop it within the range of vision afforded by the projecting beams of his headlights.
The defendants then charge that all of the acts of negligence of Porter Profitt are imputed in law and in fact to the plaintiff because he was driving the Dodge Sedan as plaintiff's own chauffeur or agent, or in the course of his employment by McCook *Page 514 
Brothers Funeral Home, Inc., and that plaintiff was then and there riding in said Sedan as the immediate employer of the said Profitt or as President of the said McCook Funeral Home, Inc. They further charge that he knew and was charged with knowing that Profitt was driving in a careless manner and at a speed that was excessive considering the weather conditions, that he was not maintaining a proper lookout and that he did not have the car under such control as to be able to stop within the range of his vision of the road ahead of him. That plaintiff so rode and continued to ride without protest, or warning, or ordering the said Profitt to reduce his speed or to operate the car in a manner commensurate with the said weather conditions prevailing at the time.
Defendants resisted the claim of liability on the ground of lack of negligence on the part of the driver of the truck and pleaded the negligence of Porter Profitt as the sole and only cause thereof, and then, in the alternative, as contributory negligence on his part which was imputable to the plaintiff.
After trial of the case in the court below there was judgment in favor of the defendants and against the plaintiff dismissing his suit at his costs, whereupon he took the present appeal.
We believe that the testimony substantially supports the contention that the accident happened sometime between five and five-thirty o'clock in the afternoon, during a heavy rainfall, at which time it was already getting dark normally and the weather conditions no doubt helped to increase the darkness. We are convinced that it was dark enough at the time to require the precaution of an automobile driver on the highway that he have his lights burning and an important point in the case therefore is whether or not the driver of the truck had any warning lights displayed on his truck at the time he was driving just before and also after the truck had stopped.
Whilst it is a violation of the law (Subsec. (a), Rule 15 under Section 3 of Act No. 286 of 1938) to leave a vehicle parked or standing upon the paved or main traveled portion of the highway, it is to be noted that the section contains the qualifying phrase "when it is practicable to park or leave such vehicle standing off of the paved or improved or main traveled portion of such highway." (Italics ours) After all, this qualifying provision seems to follow what is the general law on the subject, for in Babbitt's Motor Vehicle Law, p. 496, sec. 679, we find that statutes which prohibit such parking "do not apply to disabled vehicles, if they are so disabled as to make it impracticable or impossible to drive them on the paved portion." In this case we believe that the driver Johnson has supplied a plausible excuse for not driving the truck off of the highway. The shoulder on his right where he normally should have driven it was too narrow to accommodate its size, and because of the traffic on the highway which he says was passing at the time, he could not take a chance to drive over to the left side onto the left shoulder which was wide enough for him to park on. It is true that he ran several hundred yards after his motor had started to sputter but he thought that the trouble was caused by the rain-fall and most probably would clear up before the truck really stopped.
Be all that as it may however, even if he did stop in his lane of travel on the paved portion of the highway, if the lights of his truck were on at the time, there is no reason why they should not have afforded a warning to all other traffic approaching it from either side. Johnson says that his lights were on. He is positive about the front and clearance lights. Naturally he could not see at the moment if the taillights were burning. All he knew was that the truck had been inspected before he left New Orleans that day and apparently everything on it was in good order. But even though the tail-lights were not burning, as both McCook and Profitt say, there seems to be no reason why they should not have seen the side clearance lights. They of course insist that no lights at all were showing but in view of the admitted fact that visibility had to be very limited because of the rain and the dusk, we do not know why Johnson would not have had his lights on, the same as they had on their car, and as they admit that the car coming from the north which obstructed their passing ahead of the truck, had its lights on also, it is reasonable to presume that all traffic on the highway was observing this simple precaution.
Johnson admits that he did not display any flares but for excuse says that he did not have time to do anything after stopping before the accident happened. It seems to be merely a surmise on the part of the plaintiff and the driver, Profitt, that *Page 515 
the truck had been stopped for a considerable length of time before. Our attention is called to the fact that under the flare statute, at the hour at which this accident occurred, he was required to display flags instead of lighted flares, but we do not quite agree with that contention for if it was as dark as it seems to have been from all the testimony in the case, the proper warning for him to have displayed, if he had time to do so, would have been by means of the lighted flares. On this point we believe that the negligence charged should rather be decided on the question of the time which the driver had after the truck had stopped, as was the basis of the decision in the case of Beach v. Union Brewing Corporation, La.App., 187 So. 332, and as on this point we have nothing but the driver Johnson's statement that he did not have the necessary time after his truck had stopped and before the accident to take out his flares, we cannot hold that his violation of the statute makes him or his employer responsible for what ensued thereafter.
But now assuming that Johnson was negligent in any of the respects charged against him we are met with the further question: Does the record as presented justify us in holding that the driver of the Dodge Sedan was free of negligence himself?
Plaintiff's counsel make much of the point that Johnson testified that driving conditions were so bad that he could not see more than twenty feet ahead on the highway. Conceding that to be so, was not that condition the same for Porter Profitt, the driver of the Dodge Sedan? Profitt insists that he never saw the trailer until he was approximately forty feet away from it, at which moment he says it loomed up before him in the darkness. If, as is maintained, Johnson made the condition so bad that a driver could not see more than twenty feet ahead of him, then that of itself would seem to establish Profitt's negligence in not having his car under proper control if he was unable to stop it before running into the trailer. After admitting that it loomed up before him when he was forty feet away, not only did he fail to take steps to stop his car but on the contrary he decided to pass ahead of the trailer to its left which he says he could have done had it not been for another car approaching from the north and which obstructed his path on that side of the road. He says that he then chose the only alternative he had. He immediately applied his brakes and pulled back sharply to his right but could not stop before running into the rear end of the trailer. It is urged that he was then presented with a sudden emergency and it is claimed for him that he should not be held negligent if he made that choice even though it may not have been the proper one for him to make. But it strikes us that he took part himself in creating the emergency which it is claimed existed at the moment. Under darkness and such weather conditions which kept a driver of an automobile from seeing more than twenty feet ahead of him, it was negligence on his part to drive his car at a speed which prevented him from stopping it within that distance, and if, as he states, the trailer loomed up before him when he was forty feet away from it he should then have taken the necessary precautions to meet any emergency which may have arisen. Instead of taking any such precaution, he continued his speed which is shown to have been twenty-five or thirty miles per hour, and endeavored to pass ahead of the truck and then could not stop when the emergency arose. The rule under which the driver of an automobile is sometimes relieved from negligence in making the wrong choice when confronted with a sudden emergency cannot be successfully invoked by one who had a part in creating the emergency himself. Stromer v. Dupont, La.App., 150 So. 32; Burnett v. Cockrill et al., La.App., 145 So. 398.
Counsel for the plaintiff stress the case of Gaiennie v. Cooperative Produce Co., Inc., 196 La. 417, 199 So. 377, as authority in favor of their client. As a legal proposition that case is authority only to the extent that the contributory negligence of a driver who runs into the rear end of an unlighted truck parked on the highway at night presents a question of fact which has to be determined on the evidence produced in each particular case. On the facts such as we find them in the present case, even if it be assumed that the parked truck did not have any tail lights showing, we still believe that the driver of the Dodge Sedan who ran into its rear end was guilty of negligence himself which contributed to the accident.
Something is said in argument on the point that the composition of the trailer and the color which it was painted tended to make it very difficult, if indeed not impossible, *Page 516 
for one approaching it from the rear to see it. The manner in which it is described as presenting a solid body with a surface of some forty-five square feet, conveys to us the picture of an object which it would rather be difficult not to see. It was a different picture than was the one presented to the driver of the approaching car in the case of Warnick v. Louisiana Highway Commission, La.App., 4 So.2d 607, in which we held the driver of that car blameless for failing to have seen the trailer in time before running into it.
We are well satisfied therefore that even though the driver of the defendant truck was guilty of some negligence, Profitt was equally as guilty and the next question which arises is the law point which has been injected in the case, namely, is his negligence imputable to the plaintiff.
Counsel state in their brief that the proposition is a rather novel one, but they nevertheless are convinced that under the facts in this case, Porter Profitt's negligence is not imputable and therefore their client should recover. The undisputed facts lead us to a different conviction.
The plaintiff is admittedly the sole stockholder of the McCook Brothers Funeral Home, Inc., Profitt's employer. His brother and sister are nominal stockholders only. He directs the whole business and his brother is merely the bookkeeper and his sister the secretary of the corporation. It is true that his brother can give orders to the employees but we entertain little doubt on the point that plaintiff could countermand those orders.
On the trip plaintiff was making when this accident occurred, he had left Shreveport the day before. Whilst his brother says he was the one who assigned Profitt to drive him to New Orleans, we are sure that that arrangement was agreeable to the plaintiff. The car belonged to the funeral home of which he was the sole owner and in effect it was his car. Profitt was employed by the funeral home and may be said therefore to have been his employee also. How it can be urged under the circumstances that he had no control or supervision over Profitt, it is hard for us to understand. We are convinced that, as the employee of the plaintiff, acting within the course and scope of his employment, the negligence of Profitt which contributed to the accident which was the cause of the injury of the plaintiff, is clearly imputable to him and therefore bars his recovery as well as it would any demand that might have been made on the part of Profitt himself, were he suing the defendants.
After careful consideration of all the issues involved in the case, we are satisfied that the judgment appealed from is free from manifest error and it is therefore affirmed at the costs of the plaintiff, appellant herein.