This is an action for damages to an automobile, as well as other losses and expenses incurred by the plaintiff, Harold Claude Frost, against Mrs. Rena Anderson and her liability insurer, United States Fidelity Guaranty Company, arising out of an accident which occurred at about 1:45 a.m. on January 1, 1942, in the Parish of Iberville on paved Highway No. 168, between Addis and Plaquemine. At the time of the accident it was dark and a heavy rain was falling. The facts show that the plaintiff Frost left Baton Rouge with a companion, Ben Harold Moore, Jr., at about midnight and having crossed the Mississippi River was proceeding south on Highway 168 on his way to Plaquemine. Mrs. Anderson had left Baton Rouge in her truck, which was being driven by her chauffeur, one Wilkie Guedry, at about eleven o'clock that night. When they had passed the Town of Addis, the truck stopped, necessitating the driver's pulling over to the right hand side of the road. There is a dispute about whether the body of the truck was mostly on the shoulder or whether it remained on the paved highway altogether.
After it had stopped and at about the hour of midnight, two employees of the Darling Lumber Company of Baton Rouge, driving in one of that company's trucks, came upon the Anderson truck and stopped to render what assistance they could. One of these men was Jack Rurak, who was driving the truck, and the other, a man named Gerald Dupuy. They attempted to push the Anderson truck either by trying to start it or by pushing it off the road, but whatever the purpose was, their attempt to assist availed nothing. They were unable to push it because the bumpers of the two trucks were at different heights. A little later, a passing driver stopped and offered to take Mrs. Anderson to a place known as Club Forest, which was apparently her destination. She accepted the offer and the driver, Guedry, remained in the car and went to sleep. Not long after that, the plaintiff, driving his automobile, ran into the left rear end of the Anderson truck, the impact resulting in the damages for which he hereby seeks recovery, the total claim being in the amount of $497.
The City Court of Baton Rouge, which was the trial Court, rendered judgment in favor of the defendants after having found Mrs. Rena Anderson guilty of negligence by reason of the failure of her driver to put out lighted flares in the front and rear of the truck, but denied the plaintiff recovery because of his contributory negligence in driving at an excessive rate of speed and in failing to keep a proper lookout, under the weather conditions prevailing at the moment of the accident. Plaintiff has appealed and an answer is filed on behalf of the defendants asking that the *Page 93 
judgment be amended by sustaining the exception of no cause and no right of action which had been overruled in the court below.
Ben H. Moore, the guest of the plaintiff, testified generally about the accident, stating that they met an approaching automobile and that Frost slowed down and dimmed his lights. He estimated their original speed at about thirty miles an hour and said that they slowed to fifteen or twenty miles an hour. When the approaching car passed them the truck stood in their immediate path and although Frost applied his brakes and swerved to the left, it was impossible to miss it. He was knocked unconscious. He says that he saw no tail-light on the truck but only could have had a glimpse of it when the car struck it. Although on direct examination he states that all four wheels of the truck were on the paved slab of the highway he modifies his testimony on this point under cross-examination to the extent of saying that three-fourths of the truck was on the paved portion which placed the other fourth on the shoulder of the highway. As he was knocked unconscious he of course remembers nothing about what took place after the collision.
The plaintiff, Frost, testifies that the accident happened very much in the same manner as stated by Moore. He estimates his speed at about thirty-five miles an hour and says that he slowed down to about fifteen or twenty-five miles on meeting the approaching car from the south. He testifies that there was no tail-light burning on the truck but later says that he could not swear that there wasn't one burning, because it might have been dim and not visible. He states that as much as three quarters of the truck occupied the paved portion of the highway and estimates that he was from ten to fifteen feet from it when he first saw it. He testifies, and it is admitted, that there had been a torrential downpour and that it was raining at the time of the accident and also that there were no flares placed outside of the truck.
Wilkie Guedry, the driver of the truck and defendant's witness, testified that when the truck stopped he attempted to pull onto a side road but that a ditch stopped him and he couldn't turn. He parked off of the highway as much as he could and left the lights on the truck burning. The front wheels were definitely off the highway and if the rear wheels were on, only a part of them were. After the attempted help by Rurak and Dupuy, Guedry testifies that he went to sleep and was awakened by the impact given the truck by the blow from the Ford automobile. He says that the truck was pushed about twenty feet forward. He knows that the tail-light was burning when he left Baton Rouge and cannot state positively that it was burning when the accident happened, but he does know that he left all the lights burning on the truck. The assumption is therefore that the tail-light was burning at the time of the accident, unless something had happened to it. Since the tail-light was knocked off in the collision it was not burning afterwards. Guedry also says that there was at least four or five inches of water on the highway itself and in some places it was as deep as a foot and a half.
Rurak stated that he and Dupuy saw the truck, stalled on the side of the highway with its bright head-lights burning, from a distance some fifty or sixty feet away. He says they recognized it as a truck when they were about thirty-five or forty steps from it. He was driving in low gear because of the difficulty in traveling. He states positively that the tail-light was burning when he tried to shove the truck off and he knows that he never damaged the tail-light because they could see that his bumper was too low to meet that of the Anderson truck and they therefore never made contact.
Dupuy testifies along the same line and he also is positive that he saw the tail-light burning on the Anderson truck. He also states that in his attempt to shove the Anderson truck, Rurak had to get partly off the shoulder of the road, thus indicating that that truck was not standing altogether on the highway as at first contended by plaintiff. Both he and Rurak seem to be rather positive that both front wheels were off the pavement and that the rear end did not extend more than 18 inches or 2 feet on the paved slab.
The rest of the testimony is more or less immaterial in regard to the manner in which the accident happened. Mrs. Anderson had, as already observed, left before the collision took place but she did testify that the truck was mostly off the pavement when it stopped and that they kept the lights burning all the time she was there.
We believe that it can be said that the testimony preponderates to the effect that the truck was partially but not wholly off *Page 94 
the paved portion of the highway and that the tail-light was burning when the accident happened. It is conceded that no flares were put out by the driver and also that it was raining very hard at the time. We believe that the testimony also shows that Frost must have been driving at a pretty rapid rate of speed, if for no other reason because of the damage done to his automobile, as shown by the photographs produced for the record, from bumping into the stationary truck and also by reason of the fact that the impact pushed the truck forward about twenty feet.
Counsel for plaintiff strenuously contends that the decision of the Supreme Court in the case of Gaiennie v. Cooperative Produce Co., 196 La. 417, 199 So. 377, is controlling on the issue of contributory negligence that is presented in this case. As stated in the case of McCook v. Rebecca-Fabacher, Inc., et al., La.App.,10 So.2d 512, 515, "as a legal proposition that case is authority only to the extent that the contributory negligence of a driver who runs into the rear end of an unlighted truck parked on the highway at night presents a question of fact which has to be determined on the evidence produced in each particular case." The facts in the Gaiennie Case on which the driver was held free of the charge of contributory negligence are materially different from the facts in this case; the most notable difference perhaps being in respect to the absence of a tail-light or any lights at all showing on the parked truck, whereas in this case the proof is that the tail-lights and head-lights as well were all burning on the stationary truck. Another important difference is with regard to the condition of the highway and the weather prevailing at the time of the accident. With the surface of the road covered with water and the torrential rain which was falling at the time, restricting his vision ahead, as he admits, there devolved upon the plaintiff the duty of driving at such a rate of speed as to have his car under control in the event just such a condition as he was confronted with, arose. Under the facts as we have found them, he was not maintaining such speed but was driving entirely too fast. Although it is doubtful whether lighted flares would have withstood the weather conditions, defendants' truck driver may be said to have been guilty of negligence in not attempting, at least, to display any as he had ample time in which to make some such attempt. Notwithstanding any negligence which may thus be imputed to him, we do think that plaintiff is nevertheless barred from recovery by his own negligence in driving too fast under the circumstances and in failing to have seen the tail-light burning on the parked truck in time to have brought his car under control so as to stop it and thus avoid the accident.
We chose to decide the issue of contributory negligence on the merits of the case rather than on the exception of no cause and no right of action as prayed for in the answer to the appeal, as we were convinced from the very beginning that it was too close a question to be determined from the allegations of the petition alone. Under the allegations made it was entirely possible for the plaintiff to have proven the negligence of the defendant's truck driver without his having been shown to be guilty of contributory negligence which, of course, is an affirmative defense and has to be sustained by the defendant after it is made. As we had concluded that the burden had been carried by the defendants, we preferred to rest our decision on the merits of the case rather than on the exception, and for that reason, the exception is overruled.
Judgment affirmed at the costs of the appellant.